CHARLES WARD *versus* EDWARD E. BOURNE *& al., Ex'rs.*

By the law of Massachusetts and of Maine, the giving of a negotiable draft is to be deemed *prima facie* evidence of payment of that for which it is given.

The plaintiff, as agent of the owners, chartered their vessel for a voyage from Boston to Callao, for $1625 per calendar month, payable at Callao, so far as earned, up to time of discharge there, in drafts on the United States, at sixty days sight, to the order of the captain, first deducting amounts advanced him for disbursements, with liberty to the charterers to recharter her for a cargo of guano. The consignees, at Callao, paid the master on account of freight earned $5210 in cash, and gave their draft on a Boston house for $7000, at sixty days, payable to the order of the master, who indorsed it to the plaintiff. The consignees rechartered the vessel for a cargo of guano. At its maturity, the draft remaining unpaid and the drawees having failed, they transferred their interest in the freight money in the guano to the plaintiff, as agent of the owners, to collect the same on account of the vessel's earnings. Twenty days afterwards, the defendants' testator, owning three-sixteenths of the vessel, sold his interest in the unpaid draft to the plaintiff, at fifty per cent., taking therefor the plaintiff's note, which by its terms was "for" the testator's "three-sixteenths interest in the unpaid $7000 draft." The guano freight was received and divided among the owners, the testator receiving three-sixteenths thereof. In assumpsit to recover the money received by the testator : — *Held*,

1. That the giving of the draft was *prima facie* payment *pro tanto* of the freight earned.

2. That the plaintiff purchased of the testator the latter's interest in the draft only, and not his interest in the guano freight.

ON REPORT.

ASSUMPSIT to recover $1983 alleged to have been received prior to Dec., 1861, by Thomas Lord, the defendant's testator, the same being an interest of three-sixteenths of a certain guano freight money earned by the bark Waverly. The money was claimed by virtue of a certain assignment made to said Ward by Rollin Thorne & Co., of Boston, May 18, 1858, in words following : — "Having been advised by our Lima house, that the bark Waverly, chartered by us of you, has been rechartered at Callao for the U. S., for a cargo of guano, we hereby transfer to you all our interest in the freight money in said cargo of guano and authorize

you, as agent for the owners of above bark, to collect same on account of the bark's earnings under your charter of her to us."

"Should any drafts come to us from our Lima house, for sums advanced by them to Capt. Nowell, of ship 'General Nowell,' we agree to transfer the same over to you, on account of whatever balance there may be due you from us on account ch. of bark 'Waverly' over and above the amount already paid by us and the proceeds of the guano freight."

It appeared that Lord died Dec. 1, 1861.

*John Murphy*, called by the plaintiff, testified substantially, that plaintiff was ship's husband until Oct., 1858, when witness was appointed and so continued until she was lost in 1861; that she was chartered to Rollin Thorne & Co., and arrived in New York, Oct., 1858, with guano. Witness collected guano freight under the R. T. & Co's. assignment, and gave a receipt for it, the amount being $11,394,75. Nov. 11, 1858, settled the charter party with R. T. & Co. Balance has never been collected. With guano freight money, paid disbursements, fitted bark in N. Y. for sea, paid insurance and other bills against the bark and then divided the balance among her owners in their respective proportions, paying to Lord $670. Settlement of charter party was as follows:—

Statement of settlement, &c., charter party bark Waverly. June 10th, 1857, to Oct. 20th, 1858, 16 mos.,

| | | |
|---|---:|---:|
| 10 days, at $1625 per month, | | $26,541 67 |
| Port charges in New York, | | 150 28 |
| 1-2 Expense cleaning ship, New York, | | 30 00 |
| 1-2    "    discharging, New York, | | 119 62 |
| | | 26,841 57 |
| Paid in Callao, | $5210 00 | |
| 69 tons guano 8 hundred, | 828 00 | |
| Bal. on guano freight, *a* $12, | 10,675 75 | 16,713 75 |
| Bal. due to owners, | | 10,127 82 |

Ward *v.* Bourne.

GUANO FREIGHT.

| | | |
|---|---|---|
| Total delivered | 2,142,631 lbs. | |
| Tare and damage | 15,611 | |
| | 2,127,020 | |

| | | |
|---|---|---|
| Tons 949, 11 cwt. 1 qr. 0 lbs. at $12, | | $11,394 75 |
| Com. on $2239,25 *a* 2½ per cent., | 55 98 | |
| "  "  11,394 75 *a* 4½ per cent., | 512 76 | |
| Discount on $8,586 76, 3 mos., | 150 26 —— | 719 00 |
| Cash paid to owners of bark, | | 10,675 75 |

The remaining facts are sufficiently stated in the opinion.

The full Court were to render such judgment as law and evidence required.

*J. Dane*, for the plaintiff, contended that the $7000 acceptance, taken under the charter, represented that amount of earnings, and was not an absolute payment or extinguishment *pro tanto* thereof, and cited 2 Pars. on Con., 135; *Derickson* v. *Whitney*, 6 Gray, 248; *Zerrano* v. *Wilson*, 8 Cush., 424; *Alcock* v. *Hopkins*, 6 Cush., 484; 2 Pars. on Mar. Law, 256; *Descadillas* v. *Harris*, 8 Greenl., 298; *Williams* v. *Agry*, 4 Mason, 313.

The acceptance, representing so much of the earnings under the charter party, was secured by the assignment of the guano freight money. Bark had a lien on the future earnings but none on past. The intention is shown by the language in the assignment,—"collect same on account of the bark's earnings under your charter of her to us,"—i. e., all her earnings, between the owners on the one side and R. T. & Co. on the other.

The guano freight money was applied by competent authority to discharge so much of the earnings as was represented by the acceptance, as appears by Murphy's settlement. The round voyage is charged at the chartered price and no credit of the $7000. Lord's estate has had the benefit of three-sixteenths of the $7000, and the plaintiff is entitled

to it. If the $7000 draft was considered as outstanding, it would have entered into the settlement.

*Bourne, pro se* and the other defendant.

APPLETON, C. J.—It appears from the evidence that the plaintiff was the agent for bark Waverly, and that Thomas Lord was the owner of the three-sixteenths of the same bark.

On May 7, 1857, the plaintiff, as agent for the owners, chartered the Waverly to Rollin Thorne & Co., of Boston, "for a voyage from Boston to port or ports on the west coast of South America, and to Chincha Islands, thence to an Atlantic port of discharge in the United States, a port of discharge in Europe, the West India Islands, or to Mauritius, at the option of the charterers, bark to be consigned to Messrs. Rollin Thorne & Co., of Lima." The charterers were "to pay the said party of the first part, or his agent, for the charter or freight of said vessel during the voyage aforesaid, in manner following, that is to say : — the sum of sixteen hundred and twenty-five dollars ($1625) per calendar month, and in proportion for any part of a month during the time under this charter, payable at Callao, so far as earned up to time of bark's discharge on the coast of South America, in bills or drafts on the United States, at sixty days sight, to order of the captain, first deducting the amounts advanced him for his disbursements," &c., "and parties of the second part are at liberty to recharter the bark for a cargo of guano."

The vessel arrived at Callao, and, on Feb. 9, 1858, Rollin Thorne & Co., of Lima, paid the master on account of freight earned, $5210 in cash, and gave their draft on their Boston house, of that date, for $7000, at sixty days sight, payable to the order of Isaac Curtis, master of the Waverly, by whom it was indorsed to the plaintiff as agent.

The Lima house, in pursuance of the liberty given in the charter party, rechartered the vessel for a cargo of guano, while it was at Callao.

On May 18, 1868, the house of Rollin Thorne & Co. having failed, and the draft for $7000 remaining unpaid, they transferred to the plaintiff, as agent for the owners of the bark, their "interest in the freight money on said cargo of guano," * * "to collect same on account of bark's earnings" under the charter given them.

On June 10, 1858, Lord sold his interest in the unpaid draft of Rollin Thorne & Co. at fifty per cent. of the amount due, and received therefor the following note of the plaintiff, which he has paid.

"Kennebunk, June 10, 1868.

"Six months after date, I promise to pay to Thomas Lord the sum of six hundred fifty-six dollars for his $\frac{3}{16}$ interest in Rollin Thorne & Co. acceptance for $7000, given on account of bark Waverly, and remaining unpaid.

Charles Ward."

The freight on the guano was received and divided among the owners of the bark, Lord receiving his three-sixteenths thereof, and was not enough to pay what was due on the charter party, accruing subsequently to the settlement of freight at Callao.

The plaintiff claims that he is entitled to three-sixteenths of the guano freight money earned by the bark Waverly, after she sailed from Callao, and that the purchase of the draft was the purchase of three-sixteenths of the freight money earned, and to be earned thereafterwards.

But this claim is untenable. The charter party was entered into in Massachusetts. By its terms, the freight earned at Callao was to be paid by a draft on time. It was so paid. By the law of Massachusetts and of Maine, the giving a negotiable note or draft is to be deemed *prima facie* evidence of payment. The draft of Thorne & Co. is to be regarded as payment *pro tanto* of the freight earned at that date. Nothing is shown to rebut the presumption of law that it was so given in payment. The plaintiff, then, by his purchase, acquired only "three-sixteenths interest in Rollin Thorne & Co. acceptance for $7000," and nothing more. It

was all that was sold and all that was purchased. The risk run is indicated by the price paid.

The guano freight money should equitably go to pay the freight under the charter party which was cotemporaneously accruing. In fact, it was not sufficient for that purpose. But it could never have been the intention of the parties that Lord should surrender the freight which was being earned, for the benefit of the plaintiff who had bought an unpaid draft of the charterers at a discount of fifty per cent. Lord sold no interest of his in the freight then accruing. His transfer was of his interest in a note given for freight already earned. Lord had sold his interest in the past freight, as represented by the draft for $7000, at fifty per cent. He was entitled to his share of the freight accruing after the vessel left Callao. This, he has not sold nor transferred, and this is all he has received, and it does not amount to the sum due on the charter party after leaving Callao.

In *Zerrano* v. *Wilson*, 8 Cush., 424, cited by the counsel for the plaintiff, the bill of exchange was brought into Court and filed in a suit between the original parties. In *Derickson* v. *Whitney*, 6 Gray, 248, it was held that the payee of a bill of exchange, acceptance and payment of which had been refused, might surrender the bill and maintain an action on the debt for which the bill was given. So, in *Alcock* v. *Hopkins*, 6 Cush., 484, the Court held an action could not be maintained upon the original account, if the bill given for the amount was outstanding. But these cases do not apply, because this is not a suit upon the charter party, nor between the original parties thereto. The draft has never been cancelled nor surrendered, but is still outstanding. *Plaintiff nonsuit.*

KENT, WALTON, BARROWS, DANFORTH and TAPLEY, JJ., concurred.