## JOSEPH C. MORRISON

*v.*

## JAMES SMITH.

1. PARTNERSHIP—*liability of partner for loss of deposit.* Where a partner deposits partnership funds, with the consent of his co-partner, with a banker, and afterwards takes control of the fund with a view of having certain differences settled, but does not appropriate the same to his own use, and a loss occurs by the failure of the banker, and it does not appear that the partner controlling the deposit did anything to prevent the other from securing the debt, the loss must fall equally on both partners.

2. Where one partner takes control of the funds of the firm, and they are lost without his fault, or where the partners differ about a settlement, and one gets the funds in his hands to compel the other to have an account taken, and loss ensues without his fault, he will not be held to make the loss good to the other partner.

3. PAYMENT—*by a note or draft.* The giving of a note or draft is a *prima facie* settlement of an account, and no recovery can be had on the old indebtedness without some explanation or giving a proper account of the note or draft.

4. Where a draft is given for the amount of a deposit, which is not intended to operate as a satisfaction, and the draft is afterwards returned to the banker, and the amount credited to the depositor, the draft will not operate as a satisfaction or payment.

APPEAL from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Mr. L. E. PAYSON, for the appellant.

Messrs. WILLIAMS, BURR & CAPEN, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The parties to this suit were, in 1870, engaged as partners in feeding cattle, and, in the fall of that year, sold out the last lot of their cattle, and received therefor $4742.46, in a draft on Chicago, which appellee placed on deposit with Duff & Cowan, to the credit of Smith & Morrison. They had been unable to settle, on account of a difference between them as

to how some interest on money appellant had advanced for their business, should be arranged. Fearing, as he alleges, that appellee intended to control the money so as to compel him to sue for a settlement, he went to the bank to draw the money, but Duff informed him that it was impossible to pay the money, and suggested to him that he give his check for the amount, and he would give appellant a draft on his banker in Chicago, at the same time informing him that he had no funds there to meet it, and if presented, it would not be paid, but it was agreed that he should hold it, and thus prevent appellee from getting the control of the money until they should settle.

Subsequently, and on the first day of December, 1870, Duff & Cowan suspended payment and went into bankruptcy. Appellant had received their draft on the 21st of November, ten days before they suspended, and no further arrangement having been made, appellant did not present the draft for payment, but after they suspended, he returned it, and Smith & Morrison received a credit therefor, and appellant subsequently proved up the claim, and has received dividends on it from the assignee, one-half of which he had offered to pay to appellee, but he declined to receive it. Appellee was not aware that appellant had received the draft, or that it was returned and canceled, and he and appellant had received a credit therefor, until after these arrangements had been made.

Under a bill filed by appellee for an account, the court below rendered a decree that Morrison pay to Smith one-half of the entire sum that was deposited to their credit.

Morrison appeals to this court.

It is urged that appellant appropriated and converted the entire sum to his own use, and has thereby rendered himself liable to account to his partner for one-half of the fund.

We think the evidence fails to show that appellant did, or, in fact, intended to, appropriate the money to his private purposes. He, no doubt, took possession and assumed the entire control of the fund, but it appears that it was for the use of the firm. He did not apply it to his private business, nor did

he propose to do so, but only intended to place the fund in a position that appellee could not control it until they should settle, and if they could not, then to avoid the necessity for him to sue, and to cast that burthen on appellee.

The money was deposited with these bankers, by mutual consent of the partners, and we fail to see that appellee suffered the slightest injury by what was done by appellant. Appellee did not call for the money before the bankers suspended. Had appellant not have obtained the draft, the loss would have fallen upon both of the partners. There was nothing done by appellant that contributed to the loss. It was no more his duty to endeavor to secure the debt than it was of appellee. It is true that he took control of it, but that was a right either partner might exercise, so that he did not appropriate it to his own use. Had appellee possessed the means of securing the debt, and appellant had prevented it, then an altogether different question would have been presented. But there was nothing of the kind attempted, nor does the evidence show that it could have been done. So far from appellee making such an effort, it appears that he did not even know that the fund was under the control of appellant until after the bankers had suspended business.

To render appellant liable, would be to hold, simply because one partner takes control of funds of the firm, and they are lost without fault, he must make the loss good; or if not for that reason, simply because, where the partners are differing about a settlement, and one gets the funds in his hands, that the other might be compelled to proceed to have an account taken, and loss ensues without his fault, he must be held to make the loss good, as a punishment for the intention. We can perceive no other ground upon which to sustain the decree, and we are clearly of opinion that neither of these grounds is sufficient.

If it be urged that taking the draft by appellant was a satisfaction of the firm claim against the bankers, the answer is, that it was not intended as a satisfaction by the parties, when the arrangement was made. The doctrine of this court is,

that the giving of a note is a *prima facie* settlement of an account, and no recovery can be had on the old indebtedness, without some explanation, or giving a proper account of the note. See *McConell* v. *Stettinius*, 2 Gilm. 713, and subsequent decisions of this court.

Here, the presumption of a satisfaction of the account with the bankers, by taking the draft, was fully explained and rebutted. The banker nor appellant either of them intended or supposed that it should operate as a satisfaction, and the evidence fully accounts for the draft, as it was returned to the bankers, and the amount again credited to appellee and appellant. The evidence brings the case within the rule. The court below erred in decreeing that appellant should pay to appellee more than his proportion of the amount received by appellant from the assignee in bankruptcy.

The decree is reversed and the cause remanded.

*Decree reversed.*