# THE BELLEVILLE SAVINGS BANK

*v.*

## JAMES A. BORNMAN *et al.*

*Filed at Mt. Vernon March 27, 1888.*

1. GUARANTY—*upon condition that another shall join therein.* A party signing a guaranty of the payment of a draft or bill has the right to impose, as a condition to its acceptance and binding force on him, that a certain other person named shall become his co-guarantor, and its acceptance by the payee with notice of the condition will create no liability on such guarantor if the condition is not performed.

2. A private corporation drew its draft on its treasurer in favor of a bank, which the treasurer accepted. The president of the corporation, before its delivery to the bank, wrote his name across the back of the draft, and handed it to the treasurer, with instructions to inform the bank that the draft was not to be taken unless one A. also placed his name on the back of it, of which the bank was duly notified before acceptance. A. did not indorse his name as a co-guarantor, but signed a guaranty on a separate paper guaranteeing payment in case the draft was not paid by the corporation or its president: *Held*, that the first guarantor was not liable for want of performance of the condition.

3. PAROL EVIDENCE—*to show a failure of condition to validity of an obligation.* Parol evidence is competent to show that the guarantor of the payment of a draft or note signed the same on the condition it was not to be taken unless another named person also signed the same guaranty, and that such condition was not complied with. Such evidence does not tend to vary or alter the contract of guaranty, but is admissible to show no delivery to the payee, and that no contract was in fact made.

4. RENEWAL NOTE OR BILL—*whether in satisfaction of a prior note or bill—presumption.* Where a note or draft is taken in renewal of a former one, the presumption of law will be that the new note is not a payment of

the old one, as between the parties thereto, in the absence of anything showing a contrary intention.

5. The weight of authority is, that the intention with which the new note is accepted will control as to whether the original note or draft is paid and discharged by the acceptance of another in renewal of it, or not; and this may be shown by proof of an express agreement of the parties as to the effect of the renewal upon the indebtedness evidenced by the former note or bill, or by proof of the attendant circumstances from which the intentions of the parties can be inferred.

6. Where a subsequent promissory note is given for the same consideration as a former one, it is a question of fact, for the determination of the jury, whether the former note is thereby satisfied. If the subsequent note is executed and accepted by the parties for that purpose, the satisfaction is complete.

7. PRESUMPTION—*in support of a judgment.* The presumption of law is in favor of the correctness of the judgment of the trial or lower court, and it will be presumed that the law was properly applied to the facts by the jury, or the court, sitting as a jury, unless the record affirmatively shows error in that regard.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. W. H. SNYDER, Judge, presiding.

This is an appeal from the judgment of the Appellate Court for the Fourth District, affirming the judgment of the St. Clair circuit court, disallowing a claim presented by the Belleville Savings Bank against the estate of Conrad Bornman, deceased, which was heard in that court, by the court, without a jury, on appeal from the probate court of that county. The claim filed in the probate court was evidenced by the following instrument :

"$10,000.      OFFICE OF BELLEVILLE NAIL MILL Co.,
          BELLEVILLE, ILL., *December 12, 1873.*

"Ninety days after date, pay to the order of Belleville Savings Bank ten thousand dollars, value received, and charge same to account of Belleville Nail Mill Company.

CONRAD BORNMAN, *Pres't.*
JAMES C. WAUGH, *Sec'y.*

To F. H. PIEPER, *Treas.*, Belleville, Ill."

It was shown upon the trial in the circuit court, that after the foregoing draft was executed by the Belleville Nail Mill Company, Bornman wrote his name across the back of it, and handed it to F. H. Pieper, treasurer of said company, with instructions to inform the bank that it was not to be taken by the bank unless Edward Abend also placed his name upon the back of it. This Mr. Pieper did, and the bank, through its cashier, was fully notified of the condition interposed by Bornman to its acceptance by the bank, prior to such acceptance. It also appears that Mr. Edward Abend, the person referred to by Bornman, was president of the bank, and, with two of its directors, composed the discount committee of plaintiff's bank, to whom this draft, in the regular course of business, would pass from the hands of the cashier before it was discounted. Shortly after the draft was delivered by Mr. Pieper to its cashier, the nail mill company, through Mr. Pieper, paid to the bank four months' interest in advance, which was received by the bank. At the time of the making of this draft, the bank held the draft of the Belleville Nail Mill Company for a like amount, dated March 14, 1874, payable to the bank four months after its date, and guaranteed on the back thereof by Conrad Bornman, James Waugh and Edward Abend. Mr. Pieper testifies, and is substantially uncontradicted, that when he went to pay the discount, he asked the cashier if the draft was taken on the conditions imposed by Mr. Bornman, and the cashier replied it was. He testifies: "Mr. Bornman was particular in telling me, after it passed the discount board, to ask him (the cashier) if the note had been so guaranteed with Mr. Abend's name on the back of it;" that he did so inquire of the cashier. At the time of paying the discount before mentioned, the draft of March 14, 1874, was stamped by the bank "paid," across its face, and delivered to Mr. Pieper, who, it appears, was treasurer of the drawer. Edward Abend did not, however, place his name on the back of the draft of July 17, 1874, but executed a separate paper, as follows:

"*July 17, 1874.*

"For value received, I hereby guarantee the payment, at maturity, of the draft drawn by Belleville Nail Mill Company, upon F. H. Pieper, treasurer, accepted by him, dated July 17, 1874, payable four months after date, for the sum of ten thousand dollars, to the Belleville Savings Bank, if the same is not paid by said Belleville Nail Mill Company or Conrad Bornman.                                    EDWARD ABEND."

The draft not having been paid by the makers, was presented against the estate of Conrad Bornman, who died subsequent to the making of said draft, and his liability as indorser thereon insisted upon.

Mr. CHARLES W. THOMAS, for the plaintiff in error:

When a dealer at a bank pays off a note by renewal, the debt is the same,—the debt remains unpaid,—the credit is extended. As a general rule, the surrender of the pre-existing note does not discharge it. Daniel on Neg. Inst. sec. 205; Edwards on Bills, sec. 290, *207.

But it should be shown that it was expressly agreed that the old one should be extinguished, in order to have the effect of extinguishment; and the delivery of the old note without such agreement does not itself operate as a presumption of extinguishment, not even when the new note has been sued on and judgment obtained. Daniel on Neg. Inst. sec. 1266.

In this case, the drawer of the draft being insolvent, the debt would be lost if the renewal was to be held a payment, and the principle that a renewal is not a payment, applies with additional force. Daniel on Neg. Inst. secs. 1266, 1267. See, also, upon the point that a renewal is never held to be a payment where a security would thereby be lost, Daniel on Neg. Inst. sec. 1266 a, note 1, to 1266; *Dodge* v. *Emerson*, 131 Mass. 467.

In this case the draft given in renewal was actually delivered to the bank by Pieper, with Bornman's guaranty written on it, and no parol evidence is admissible to show that the contract was other than it was written. *Mason* v. *Burton,* 54 Ill. 349; *Beattie* v. *Browne,* 64 id. 360; *Courtney* v. *Hogan,* 93 id. 101; *Martin's Exr.* v. *Lewis' Exr.* 32 Am. Rep. 682.

If the draft had been *in escrow,* perhaps some modification of the rule might be made; but a note or paper must be delivered to a third person, if *in escrow.* Edwards on Bills, sec. 243; *Millet* v. *Parker,* 2 Metc. 608.

It may well be doubted whether, under all the circumstances, Abend is not in fact, as between him and Bornman, bound to contribute, and if this is so, there is no pretense of a defence to this claim. There is nothing in the point that Abend's writing was on a separate piece of paper. 1 Wait's Actions and Defences, 594; Edwards on Bills, 314, *220.

Messrs. WILDERMAN & HAMILL, for the defendants in error:

In cases where the Appellate Court finds the facts the same way as the trial court did, and there are no disputed questions of law, the judgment of the Appellate Court is conclusive. Laws of 1877, p. 153, sec. 89; *Tenney* v. *Foote,* 95 Ill. 99; *Bridge Co.* v. *Commissioners of Highways,* 101 id. 518; *Fitzsimmons* v. *Cassell,* 104 id. 352; *Edgerton* v. *Weaver,* 105 id. 47; *Stock Yards* v. *Ferry Co.* 102 id. 514.

Where a trial is had in a trial court, before the court, without a jury, on the evidence offered by both the opposing parties, and no propositions of law are submitted to the trial court for its decision, and the judgment of that court is affirmed by the Appellate Court, the record presents no questions of law for the decision of this court. *Fitch* v. *Johnson,* 104 Ill. 118; *Edgerton* v. *Weaver,* 105 id. 48; *Steinman* v. *Steinman,* 105 id. 348; *Leonard* v. *Patton,* 106 id. 99; *Paddon* v. *People's Ins. Co.* 107 id. 196; *Casner* v. *Preston,* 109 id. 531; *Miller* v. *Life Ins. Co.* 110 id. 102.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

When Conrad Bornman wrote his name, as guarantor, upon the draft of the Belleville Nail Mill Company, of the date of July 17, 1874, he imposed, as a condition to its acceptance by the plaintiff bank, that Edward Abend should become his co-guarantor thereon, of which the bank had actual notice prior to its acceptance of the draft. Bornman had the right to impose this condition, and the delivery of the instrument being conditional, created no liability until the condition was performed. It was competent to prove such condition and non-compliance therewith by parol, not as tending to vary or alter the contract of guaranty, but for the purpose of showing that there had been no delivery thereof to plaintiff in error. The condition materially affecting, as it did, the liability of Bornman, and the draft not having been guaranteed by Abend, so that he would become Bornman's co-guarantor thereon and liable to contribute in payment of the draft, as required by the conditions thus imposed, the delivery of Bornman's contract of guaranty never became complete, and he was not, therefore, liable, as guarantor, upon the draft of July 17, 1874. *Stricklin* v. *Cunningham*, 58 Ill. 293; *Knight* v. *Hurlbut*, 74 id. 133; *Rhode* v. *McLean*, 101 id. 467; *Lovell* v. *Adams*, 5 Humph. 133; *Hull* v. *Parker*, 37 Mich. 590; *Benton* v. *Martin*, 52 N. Y. 570; *Fletcher* v. *Austin*, 11 Vt. 447; Edwards on Bills, 186.

It is, however, insisted, that if Bornman was not liable as guarantor upon the draft of July 17, that draft having been given in renewal of a like draft in all respects, except date, dated March 14, 1874, upon which Bornman was a guarantor, the acceptance by the bank of the last draft, with Bornman's incomplete contract of guaranty thereof, did not extinguish his liability upon the former draft, and that plaintiff in error should, in the county court, have recovered upon that liability. The insistence is, that by the guaranty of Bornman of the March draft, he became liable to pay that draft if the drawer

failed to pay at maturity; and the draft of July 17, 1874, being in renewal of the March draft, that such renewal was not a payment of the former draft, and his liability as guarantor thereon was therefore not extinguished.

The authorities are not uniform upon the question as to whether the acceptance of a new note or bill in renewal of another, upon the same consideration, without proof of the intention of the parties in making or accepting the same, should be held to be a payment of the original note or bill, or not. Plaintiff in error contends, the presumption of law is, that a note or draft taken in renewal of a former one is not a payment of the original note or draft, as between the parties, and in this is sustained by what is said to be the weight of authority. (Edwards on Notes and Bills, 291; 2 Parsons on Notes and Bills, 203.) Mr. Parsons, however, says: "The general custom and understanding of the mercantile world would seem to demand that a new note given in renewal of an old one, which is taken up, as it is termed, should pay and cancel the old note for which it is given." He seems to find support, more or less direct, in many adjudicated cases. *Nichol* v. *Bates*, 10 Yerg. 429; *Hill* v. *Bostick*, 10 Humph. 410; *Huse* v. *Alexander*, 2 Metc. 157; *Cornwall* v. *Gould*, 4 Pick. 444; *Slaymaker* v. *Gumbacker*, 10 S. & R. 75; *Alford* v. *Baker*, 53 Ind. 279; *Holmes* v. *Smith*, 16 Me. 177; *Skenkel* v. *Taylor*, 12 La. Ann. 773; *Smith* v. *Harper*, 5 Cal. 330.

It will not be profitable to review the authorities relating to that question, or necessary to re-state the rule of law upon that subject in this State. The decision of that question is not at all necessary to the solution of the questions involved in this case, nor does it necessarily arise in its determination, for while there are decisions holding that the legal presumption arising from the renewal can be rebutted only by proof of a contrary express agreement of the parties, the decided weight of authority is, regardless of what the legal presumption arising from the mere fact of renewal is held to be, that, it being

the proper subject matter of contract, the intention with which the new note is accepted will control as to whether the original note or draft is paid and discharged by the acceptance of another in renewal of it, or not, and that this may be shown by proof of an express agreement of the parties as to the effect of the renewal upon the indebtedness evidenced by the former note or bill, or by proof of the attendant circumstances, from which the intention of the parties can be inferred.

Daniel, in his work on Negotiable Instruments, after referring to the authorities relating to the legal presumptions arising from the renewal of negotiable instruments, says, section 1267: "The presumptions of law which we have referred to, are universally held to be open to rebuttal; and it is competent for the parties to show that the bill or note was, by express agreement, received in absolute payment and discharge of the precedent debt, or the contrary, or that there are facts and circumstances attendant upon the transaction from which an understanding and agreement might be inferred." So in Pennsylvania, where it was held that the taking of a renewal note was not a satisfaction of the former bill or note, "unless it was so intended and accepted by the creditor," it is said: "But if so accepted, it is a satisfaction. The *quo animo* in which it was accepted is a matter of fact, which the court can not take to itself and exclude the jury from a decision of it. The intent may often be deduced from circumstances, though nothing positive was expressed." (*Hart* v. *Bollar,* 15 S. & R. 162.) This, undoubtedly, is the rule of law in this State, where the holding is in harmony with the rulings elsewhere. In *Yates* v. *Valentine,* 71 Ill. 644, it is said: "Where a subsequent promissory note is given for the same consideration as a former one, it is a question of fact, for the determination of the jury, whether the former note is thereby satisfied. If the subsequent note was executed and accepted by the respective parties for that purpose, the satisfaction is complete." See, also, *Morrison* v. *Smith,* 81 Ill. 221; *Hough* v. *Ætna Life Ins.*

Co. 57 id. 318; *White* v. *Jones et al.* 38 id. 159; *Strong et al.* v. *King,* 35 id. 19; *Varner* v. *Nobleborough,* 2 Greenlf. 121; *Ward* v. *Borne,* 56 Me. 161; *Crane* v. *McDonald,* 45 Barb. 354; *Brewer* v. *Branch Bank,* 24 Ala. 440; 1 Edwards on Notes and Bills, sec. 289; Parsons on Notes and Bills, 203; *Flower* v. *Elwood,* 66 Ill. 438; *Conway* v. *Case,* 22 id. 127; *Archibald* v. *Argall,* 53 id. 307; 2 Greenleaf on Evidence, sec. 527.

It is true, as stated by counsel, that in *Yates* v. *Valentine,* the note given and accepted in renewal was made payable to a third person; but that was simply a circumstance from which the inference of fact might arise that the parties intended the renewal note to be a satisfaction of the precedent indebtedness, and it was so treated in the consideration of that case. That fact, therefore, in no way militates against the authority of that case in establishing the rule announced.

The question of whether it was intended or understood that the prior draft was paid by the acceptance of the new draft, is, therefore, both upon authority and principle, a question of fact, not of law, and it was competent for the jury,—or, in this case, the court, sitting as a jury,—to consider all the attending circumstances proved, and deduce therefrom the understanding or intention of the parties in respect thereto. Waiving the question as to whether plaintiff in error should be required to confine its proof to the claim filed in the probate court, it is evident that the question of the liability of Bornman's estate on the draft of March 14, 1874, necessarily depended upon the finding of fact as to whether that draft had been paid, and his liability as guarantor thereby discharged, by the acceptance, by the plaintiff bank, of the draft of the nail mill company, of July 17, and that the determination of that question would depend upon the fact of intention of the parties in respect thereof.

It may be conceded, that an extension of time to the principal debtor, if made after the liability of the guarantor be-

comes fixed by non-payment at maturity, (*Hayes* v. *Wells*, 34 Md. 512,) will not discharge the guarantor upon the original obligation; yet if the debt is paid, the liability of the guarantor is forever gone, and can not be revived without his consent. Those cases which seem to hold that the liability of the guarantor or surety will revive on the former or original debt, will be found to relate to a state of facts where there has been a suspension of the right of action, simply, by reason of the extension of time to the principal debtor, the original liability of the guarantor remaining, in the meantime, undischarged.

The trial in the circuit court in this cause was by the court, without a jury, by the consent of parties. The circuit court, upon proof of the attendant circumstances, from which the acceptance of the new draft for and in payment of the former might be inferred, found for the defendant, and entered its judgment accordingly. That judgment has been affirmed by the Appellate Court. No propositions of law were presented by either party, to be held or refused by the court, as it is provided by statute may be done, thus preserving the rulings of the court upon questions of law. No error in the rulings of the court in the admission or exclusion of evidence has been pointed out or urged in this court, nor is any perceived by us. We are not permitted to review, on appeal from or writ of error to the Appellate Court, controverted questions of fact. The judgment of the Appellate Court, affirming the judgment below, must, in the absence of a finding of the facts by the Appellate Court, be treated in this court as conclusively determining all controverted questions of fact necessary to the maintenance of the judgment adversely to the appellant or plaintiff in error. It therefore follows that plaintiff in error can not be heard in this court to say that error has intervened upon questions of fact. The finding of the Appellate Court is, as we have said, conclusive and final as to all such questions.

It is, however, sought by counsel for plaintiff in error to parry the force of this position, by accepting, in their argument

14—124 ILL.

filed in this court, the statement of fact made in the brief of counsel for defendant in error filed in the Appellate Court. Counsel do not concede, however, the vital fact insisted upon by the defendant's counsel, that it was the intention of the parties, in the acceptance of the renewal draft of July 17, 1874, that the former draft should be paid and satisfied.    It is manifest that a material question of fact was, whether the last draft was accepted by the bank in payment and discharge of the prior draft, or not, and the intention with which it was given and accepted became an important and controlling matter of inquiry.    It is apparent the draft of July 17, as to the nail mill company, the drawers, was a complete instrument.    No condition was attached by the drawer to its acceptance or delivery.    Plaintiff in error had the undoubted right to accept it with or without security, or with the guaranty of Abend, in payment and satisfaction of the precedent indebtedness.    Whether it did so or not, was, as we have seen, a question of fact, to be deduced from proof of the attending circumstances.

The statute (Practice act, sec. 42,) has made ample provisions for preserving in the record the rulings of the court upon questions of law arising in the case.    It may be as efficiently and conveniently done by submitting to the court written propositions, to be held as law in the decision of the case, as it can by instructions to a jury.    It is made the duty of the court to pass upon all questions of law thus submitted, and to hold, refuse or modify the same, as the trial court shall deem right, and either party may except to such ruling.    As we have said, the presumption of law is in favor of the correctness of the judgment of the inferior court, and it will be presumed that the law was correctly applied to the facts by the jury, or the court sitting as a jury, unless the record affirmatively shows error in that regard.    This precise question has been passed upon by this court in the cases of *Tibballs et al.* v. *Libby,* 97 Ill. 552, *Hobbs* v. *Ferguson's Estate,* 100 id. 232, *Steinman* v.

*Steinman*, 105 id. 349, and *Montgomery et al.* v. *Black et al. ante*, p. 57, and we do not deem it necessary to further elaborate the question here.

Plaintiff in error having failed to preserve in the record, in the only mode by which it can be done in cases of this kind, the rulings of the trial court, and the presumption being that the law was correctly applied, no error can be assigned as to such rulings. The questions of fact having been settled by the judgment of the Appellate Court to be sufficient to maintain the judgment of the court below, and there being no error of law, the judgment of the Appellate Court must be affirmed, which is accordingly done.

*Judgment affirmed.*

Mr. Justice Craig, dissenting:

As I do not agree with a majority of the court in the judgment rendered, I desire to state the rules of law which, in my judgment, should control the decision of the court.

The following instrument was filed in the county court, as evidence of the demand of the Belleville Savings Bank against the estate of Conrad Bornman, deceased:

"$10,000.      Office of Belleville Nail Mill Co.,
         Belleville, Ill., *July 17, 1874.*

"Four months after date, pay to the order of Belleville Savings Bank, ten thousand dollars, value received, and charge same to account of Belleville Nail Mill Company.

Conrad Bornman, *Pres't.*

James C. Waugh, *Sec'y.*

To F. H. Pieper, *Treas.*, Belleville, Ill."

Written across the face of this instrument appear the words: "Accepted.—F. H. Pieper, Treas." On the back are the signatures of Conrad Bornman and James Waugh.

In the circuit court the cause was tried without a jury, and it was proven that after the draft was executed by the Belle-

ville Nail Mill Company, Bornman wrote his name on the back
·of it, and gave it to F. H. Pieper, and directed him to tell the
·cashier of the bank that the draft was not to be taken by the
bank unless Mr. Abend placed his name on the back of it;
that when the draft was given to the cashier he was so notified.
Abend never placed his name on the back of the draft. He
·executed a separate paper, guaranteeing the payment of the
draft if it was not paid by the Belleville Nail Mill Company
·or Conrad Bornman. Had this been all there was of the case,
it is plain that Bornman was not liable. His contract was a
·conditional one. He guaranteed the draft on the condition
that Abend should also become a guarantor, like himself, by
writing his name on the back of the draft, and the bank, before
accepting the draft, had notice of that fact. As the condition
upon which Bornman agreed to become bound as a guarantor
of the paper was never performed, of which the bank had no-
tice before accepting the draft, he incurred no obligation. The
bank had no right to take the draft until Abend had written
his name on the back of it. It was, as between the bank and
Bornman, an incomplete instrument until that condition was
complied with, and, so far as the conditional contract of Born-
man is concerned, no recovery can be had upon it.

But there is another feature of the case, which places the
liability of the parties in a different aspect. This draft was
given in renewal of a like one in all respects, except date, made
on March 14, 1874, on the back of which appear the signa-
tures of Conrad Bornman, James Waugh and Edward Abend,
as co-guarantors. This last draft, when the other one was
taken by the bank, was marked paid, and surrendered, and
·was put in evidence on the trial, by defendant. That the draft
·of March 14 was in all respects valid, and a binding obligation,
·and that Bornman was liable thereon as guarantor, is not
·questioned or denied. That it never was in fact paid is also
·a conceded fact. And if Bornman shall not be held liable as
·guarantor on the renewal draft of July 17, then it is contended

that his liability as guarantor of the old draft of March 14 remains undischarged, and may be enforced against his estate.

The authorities are not uniform on the subject of the giving of a bill of exchange or a negotiable promissory note for a pre-existing debt being regarded as payment, or not, of the indebtedness. But the prevailing rule I regard to be as stated in 1 Edwards on Bills and Notes, sec. 290, viz.: "In general, the American courts have followed the doctrine of the common law, holding that the negotiable note of a debtor, when delivered to his creditor on his own debt, without express agreement, is not a payment thereof, but that the giving of the note may be shown in evidence on the trial in an action brought on the original demand, and will defeat a recovery on it unless the note is produced and cancelled." In further support of such rule, see secs. 277, 278, 286, 290, same author, and 1 Daniel on Neg. Inst. sec. 205; 2 id. secs. 1259, 1260, 1266, 1267, and authorities cited in the notes. And see *McConnell* v. *Stettinius*, 2 Gilm. 713; *Miller* v. *Lumsden*, 16 Ill. 161; *Morrison* v. *Smith*, 81 id. 221.

Generally, where a new bill or note is given in renewal of another bill or note, the new bill or note operates only as a suspension of the debt evidenced by the original, and is not a satisfaction of it until paid. Although in some cases it has been held that an agreement to take a bill or note in absolute payment of a debt must be express, in order to render it such, the better opinion is said to be that such agreement may be implied as well as expressed, and that all the circumstances may be looked to, to ascertain what was the actual agreement of the parties. 2 Daniel on Neg. Inst. sec. 1268.

There was in the present case nothing of any agreement that the renewal draft should be taken in payment of the old one, and all the circumstances indicative of any intention of the parties in that respect, are the surrender of the old draft,— the bank stamping it "paid" on its face,—and indorsement on the renewal draft of payments subsequently made. But it is

held that delivery of the old note, without arrangement that it shall be extinguished, does not, of itself, operate as a presumption of extinguishment; neither does the receipting of the renewal note as payment so operate,—such receipt being interpreted as meaning conditional payment, to be in full when the renewal note is paid. (See authorities above cited.) The circumstance of indorsing some payments that were made, on the last note, although dwelt upon by counsel, I regard as of no significance.

It is said by Parsons, (2 Parsons on Notes and Bills, 203,) that the general custom and understanding of the mercantile world would seem to demand that a new note given in renewal of an old one, which is "taken up," as it is termed, should pay and cancel the old note for which it is given. But this appears to be but the author's individual opinion, and not having support in the adjudicated cases. (See 2 Daniel on Neg. Inst. sec. 1266.) But it is laid down by Parsons: "When a new note is exchanged for one void or worthless from any cause, as, usury, the former contract is not thereby avoided. The debtor has not given that to the creditor which the creditor supposed, and therefore the creditor is not bound thereby. Nor would an exchange or renewal of notes be held a payment and discharge, if such discharge would injure the creditor." (2 Parsons on Notes and Bills, 205, 219.) Daniel lays it down: "Even where a note is considered as paid and discharged by one given for it, as a general rule the case is excepted where the debt would, by such construction, be lost, because then the intention to receive the second as a discharge would be *prima facie* rebutted. This view was taken where the first note was secured by mortgage, citing authorities." 2 Daniel on Neg. Inst. sec. 1266.

A renewal note has the benefit of any security for the payment of the original, whether by way of mortgage, deed of trust, or otherwise, and the holder may enforce it. (1 Daniel on Neg. Inst. sec. 748.) This is abundantly established by the author-

ities, where the first note is secured by a mortgage. It is also held, where the renewal note is void for usury in it, that the original note is not discharged, and may be enforced. *Rice* v. *Welling,* 5 Wend. 595; *Leary* v. *Miller,* 61 N. Y. 490.

In the case at bar there was a clear liability on the part of Bornman and Abend, as co-guarantors, for the payment of the draft of March 14, 1874. That draft has never been paid, and Bornman's liability to pay it has not been discharged. As respects Bornman, all that he has done in the way of discharging this undoubted liability of his, is, that he has made an abortive attempt toward the continuation and extension of his liability for four months. In place of his guaranty of the draft of March 14, he was willing to become guarantor with Abend on a draft in renewal, payable at the end of four months, and went so far in that purpose as to place his name on a renewal draft dated July 17, payable at four months, upon the condition that before it was delivered Abend should likewise place his name on the draft as co-guarantor. This Abend did not do; consequently Bornman's placing his name on the renewal draft went for naught, and it was as if he had never done so. So Bornman's liability on the draft of March 14, 1874, remains with nothing whatever done on his part in discharge of it. To hold Bornman to be quit and clear of all liability by reason of the bank taking the renewal draft, would be a manifest injustice, and not in accordance with the intention of either party. The bank surely did not intend to release the liability of Bornman, as guarantor. Bornman had no intention or expectation of having his liability as guarantor extinguished. He was willing and expected to continue his existing liability as guarantor, by having Abend join with him in the guaranty of the renewal draft. But if Abend would not become a co-guarantor with him of the renewal draft, then, of course, Bornman intended and expected that his liability, together with that of Abend, as guarantor on the old draft, should be and remain as it then was. There is no reason why his mere un-

successful attempt to renew the guaranty should discharge it. His putting his name on the renewal draft, without a delivery thereof, was of no detriment to him or benefit to the bank, and the taking by the latter of the renewal draft, with Bornman's name upon it, should, under the circumstances, count as nothing toward the discharge of his liability as guarantor upon the original draft of March 14, 1874. Nor did the separate guaranty given by Abend affect the rights of any of the parties. He remained bound as co-guarantor on the old draft with Bornman. For like reason that the taking of the renewal draft would not have been held to affect the security of any mortgage, had there been one, for the payment of the original draft, I think it should not be held to discharge this security of a guaranty for the payment of the first draft.

*Yates* v. *Valentine,* 71 Ill. 643, which is referred to by counsel for defendant in error, is obviously a quite different case from the present, and should not control it. That was not a case of a mere renewal of a note, but in the place of a former note the maker of it had given a new note, made payable to another person than the payee of the former note, and thus had been placed in a worse condition, where to have enforced the old note against him would have made him subject to a double liability for the same debt. In *McConnell* v. *Stettinius, supra,* the rule as I have stated, which generally prevails, was laid down, and has never intentionally been departed from by this court.

But it is said the plaintiff must recover on the claim presented, (the draft of July 17,) or not at all,—that the draft of March 14 was not presented as a claim against the estate, and an allowance can not be predicated upon it. I do not concur in this view. The doctrine contended for is entirely too technical. No pleadings are required in the county court in a proceeding of this character, and I think a party ought to recover where the evidence shows that he is entitled to a judgment, although a mistake may have occurred in filing the

claim. *Harrison* v. *Lindley*, 104 Ill. 247, is a case where a recovery was sustained on proof variant from the claim filed.

Section 24 of the Practice act provides, "that at any time before final judgment, in a civil suit, amendments may be allowed  *  *  *  changing the parties, either plaintiffs or defendants, changing the form of the action, and in any matter, either of form or substance, in any process, pleading or proceeding, which may enable the plaintiff to sustain the action for the claim for which it was intended to be brought, or the defendant to make a legal defence." This act has always received a liberal construction, and since its passage amendments almost unlimited in character have been sustained when made, even in courts where written pleadings are required. Less strictness would, of course, be required in courts where no written pleadings are required. Indeed, the whole theory and policy of our practice now is, to allow a recovery in all cases, regardless of technical rules, where the evidence shows a right of recovery. Such being the case, it would be no less than taking a step backward to lay down a rule of practice, in a court where no pleadings are required, which would defeat a recovery on the evidence, merely because the evidence was variant from the claim in writing, filed as the foundation of the action. This I am not prepared to do.

It is also insisted that the question involved is one of fact, upon which the decision of the Appellate Court, affirming the judgment of the circuit court, is conclusive. I do not take that view of the question. Had the question been merely whether or not the draft had been paid, that might be regarded as a question of fact. But that was not the point. The question was, whether the giving of the draft of July 17 operated as a payment of the draft of March 14,—and that was a question of law. Whether the draft last dated was given in renewal of the one of date March 14, may be regarded as a question of fact; but when the fact was established by the evidence, whether the renewal operated as a payment of the first draft was a

question of law, upon which the court was required to pass in rendering a judgment in the cause. There was here no dispute in regard to the facts. Conceding the facts, therefore, to be as claimed by the defendant, did they constitute a defence, under the rule indicated in *Fitch* v. *Johnson*, 104 Ill. 119? That was a question of law, which may be reviewed on appeal.