# Herman H. Kohlsaat v. Illinois Trust and Savings Bank, Trustee, Galena Trust & Safety Vault Co. et al.

1. LIENS — *Extinguishment of—The Rule in Equity.*—A court of equity will keep a lien alive or consider it extinguished as will best serve the purposes of justice and the actual and just intention of the parties.

2. CHANCERY PRACTICE—*When the Findings of the Master are Conclusive.*—Where the evidence fairly tends to establish the conclusions reached by the master and affirmed by the chancellor, a reviewing court will not reverse upon the sole ground that if the evidence had been submitted to it *in limine* it might have reached a different conclusion.

3. CONTRACTS—*To Be Construed Against the Party Drawing Them.*— A party can not complain, where the language of a contract drawn by him is uncertain, the intention obscure and open to construction. if the construction of his own words is held most strongly against him.

Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge presiding. Heard in this court at the October term, 1901. Affirmed. Opinion filed May 5, 1902.

Kohlsaat v. Illinois Trust & Savings Bank.

December 24, 1897, the Illinois Trust & Savings Bank, as trustee, filed a bill against the Galena Trust & Safety Vault Company et al., to foreclose a trust deed on a lease and the premises described therein, which deed was given to secure the payment of three hundred bonds of $1,000 each, dated July 2, 1894. A receiver was appointed the day the bill was filed, but without prejudice as to the rights of Kohl-; saat under the assignment to him of certain leases made by tenants of the building.

Kohlsaat answered, and then filed his cross-bill, in which he set up the claim hereinafter detailed.

Issues were joined, the cause referred to a master, who took the testimony, and then made a report adverse to the Kohlsaat claim. Upon the hearing the chancellor approved the report of the master, and dismissed the cross-bill for want of equity.

Appeal prayed for, allowed to and perfected by said Kohlsaat.

WILSON, MOORE & McILVAINE, attorneys for appellant.

MATZ, FISHER & BOYDEN, attorneys for appellees.

MR. JUSTICE BALL delivered the opinion of the court.

. Appellant held a ground lease from one Freer of certain real estate in the city of Chicago, upon which the Fort Dearborn building is situate. May 1, 1894, he made a lease of the premises to the Galena Trust & Safety Vault Company at an advanced rent, the company also agreeing to erect a building upon the premises. This was done, the building being completed May 1, 1895. The company, under date of July 2, 1894, made a trust deed conveying all its rights and interest in these premises to the Illinois Trust & Savings Bank to secure its three hundred bonds of even date, in the sum of $1,000 each, payable to bearer with interest at six per cent per annum. These bonds were delivered to the contractors, Michael Greenebaum Sons Company, who used them as security for the purpose of obtaining money which they paid out for material used in, and to subcontractors who were engaged upon such building.

The rent under the Galena Company's lease was payable at the American Trust and Savings Bank. It was the duty of that bank, out of this fund, first to pay the rental due under the Freer lease, and then to turn the balance over to the appellant.

The company failed to pay the taxes for 1897, and the ground rent for the last two quarters of 1896, ending January 31, 1897. The rentals of the building during that period were used to pay certain floating indebtedness of the company. Because of this default appellant threatened to declare a forfeiture. It was for the interest of both the company and of appellant that the taxes and ground rent be paid. Thereupon they made an agreement dated November 25, 1896, Eugene E. Prussing being named therein as trustee for appellant, in which it is recited that the company is in arrears in the payment of the ground rent in the sum of $19,650, up to and including January 31, 1897; that he, Kohlsaat, has agreed to extend the time of payment of this $19,650, and has "accepted for such extension thirty-nine promissory notes of said company, thirty-eight being for $500 each and one for $650, payable monthly, the first being due February 1, 1897; that he has waived his right to enforce said lease by reason of default in the payment of such rents; that said company is desirous of securing to him the payment of the ground rent and taxes for the years 1897 to 1901, both inclusive, and therefore assigns to him certain leases made by tenants of parts of such building; (then follows a schedule of such leases amounting to the face value of $40,084); that in case the company fails to keep this agreement "said waiver and extension shall, at the option of said Kohlsaat, become null and void."

To secure the payments of rent the company on the same date, by another agreement, assigned to Prussing as trustee, for the term of ten years, a lease made by the Lake Shore & Michigan Southern Ry. Co. for part of said building at an annual rental of $7,500.

All these tenant leases were delivered to Prussing as trustee for Kohlsaat, and were afterward turned over to the

Kohlsaat v. Illinois Trust & Savings Bank.

receiver under the order of December 24, 1897. The notes then given were indorsed by appellant, and by him sold, and the proceeds applied to the payment of the sums due under the Freer lease. These notes to the extent of $5,000 were paid by the company; thus leaving $14,650 unpaid, which is the subject-matter of this controversy. These unpaid notes, as they fell due, were taken up by renewals, which were indorsed by appellant.

Upon hearing of this notice of forfeiture, the bond-holders, who, up to that time, had been told that all ground rent and taxes were paid, ordered a foreclosure of the trust deed. This was done, and the property sold, and the entire matter closed up, except this issue between appellant and the Galena Company.

The question now is whether or not the notes executed November 25, 1896, were given and received as payment for the rent for the last two quarters, ending January 31, 1897. The master determined this question against the appellant, and the learned chancellor sustained that finding.

The master reaches the following conclusions:

" After carefully considering all the evidence, including the documents, being the aforesaid contracts, and resolutions of the Galena Trust and Safety Vault Company, I am of the opinion and find that it was the intention of both parties to the aforesaid arrangement, that the aforesaid notes for $19,650 should be and were received as payment of the rent for the two quarters, due January 31, 1897.

I further find, therefore, that the said cross-complainant, H. H. Kohlsaat, is not entitled to the relief prayed for in said cross-bill of complaint."

And he recommends a decree in accordance with the prayer of the original bill.

What the parties intended by the agreement of November 25, 1896, is to be ascertained by what they said and did then and thereafter.

This agreement was authorized on the part of the company by a resolution adopted by it, which was drawn by Mr. Prussing, who was then the attorney of appellant. It empowered its president and secretary to make and deliver

to Kohlsaat the said thirty-nine notes " in payment of rent due him," and to assign to him the lease of the Lake Shore & Michigan Southern Ry. Co. of the corner store in said building for the term of ten years as security for said notes. This lease yields an annual rental of $7,500. Also by another resolution then drawn by the same attorney, the company, in consideration of the acceptance of these notes by Kohlsaat " in payment of the remainder of the rentals due said Kohlsaat from this company during the year 1896, and down to and including January 31, 1897, and the extension of time and waiver of forfeiture thereby made by him," assigns to Prussing, for the benefit of Kohlsaat, $40,000 in yearly value of tenant leases.

It is agreed, by stipulation, that the testimony of Greenebaum as to the giving of these notes " shall be deemed to express the real agreement of the parties." This witness says :

" November 25, 1896, I believe we gave notes for $19,650 in payment of the rent due."

Mr. Kohlsaat testifies :

" He (Greenebaum) cleaned up the indebtedness of rent, and I think some money advanced him on some of the rents."

The good faith of Mr. Greenebaum, who was acting for the Galena Company, is not questioned by appellant. On the contrary, by the stipulation in regard to his evidence, he is commended. The banks holding these bonds, and others interested in them, made repeated inquiries of Greenebaum, up to the time the notice of forfeiture was served, about the payment of the taxes and ground rent, and his constant reply was that they were paid as they fell due.

The contention of appellant is that the giving of these notes did not pay and discharge the rent, but constituted a mere extension of time for the payment of the rent, and a waiver of the rights of forfeiture of the lease for the past default in the payment thereof, and that appellant still had the right, after default in the payment of said notes, upon surrendering the same, to enforce the lien given him by the lease to secure the payment of said rent.

The leading case cited by his counsel is Richardson v. Hockenhull, 85 Ill. 124, where Richardson held a first mortgage on a lot to secure the payment of $1,000. Two subsequent judgments were liens upon the same lot. The property was not worth more than the mortgage debt. To save the trouble and expense of a foreclosure the holders of the equity of redemption, without any other consideration than the discharge of the mortgage indebtedness, quitclaimed the property to Richardson. Then executions were issued upon the judgments and levied upon the property. Thereupon a bill was filed to enjoin the sale and to foreclose the mortgage, which had been released of record. The court quote from Hilliard on Real Property, Vol. 1, p. 444:

" A court of equity will keep an incumbrance alive or consider it extinguished, as will best serve the purposes of justice and the actual and just intention of the parties. It will sometimes hold a charge extinguished where it would subsist at law, and sometimes preserve it when, at law, it would be merged. The question is always one of intention. The interest of the parties and the intention are to be the controlling considerations. * * * Under such circumstances it is unreasonable to believe it was the intent of Richardson to give up his mortgage, which secured him his debt, and leave the property free and clear to be taken on judgments which were a lien only on the equity of redemption of O'Brien."

It will be noted that in the above case there was no new consideration given nor any additional security taken. Equity required that both estates should be kept alive. The rule is (and Richardson v. Hockenhull, *supra*, is not to the contrary) that whether it was intended or understood that the giving of a note shall extinguish the preceding debt, is a question of fact, not of law, and it is competent for the jury, or for the court sitting as a jury, to consider all the circumstances proved and deduce therefrom the understanding or intention of the parties in respect thereto. Belleville Savings Bank v. Bornman, 124 Ill. 200.

The resolution under which these notes were authorized to be given was drawn by the attorney of appellant. He

can not complain, where the language is uncertain, the intention obscure and open to construction, if the construction of his own words is most strongly against him. Massie v. Belford, 68 Ill. 290.

It is settled law in this State that where the evidence fairly tends to establish the conclusion reached by the master and affirmed by the chancellor, a reviewing court will not reverse upon the sole ground that if the evidence had been submitted to it *in limine* it might have reached a different conclusion. Siegel v. Andrews, 181 Ill. 350.

A careful consideration of the evidence in this case convinces us that the learned chancellor did not err in dismissing the cross-bill of appellant for want of equity.

It is therefore ordered that the decree of the Circuit Court be and it is affirmed.