[No. 3,217.]

HENRY MAHAN v. GUY M. WOOD.

NOTE FOR STOCK OF CORPORATION NOT YET FORMED.—A promissory note executed for the purchase of a certain number of shares of a homestead association about to be formed, under a name and with a number of shares agreed upon when the note is given, does not fail for want of consideration, because the association when formed has a name or number of shares of stock different from that agreed on, provided the land is the same and the lots are of the same value as the promissor had reason to expect.

IDEM.—The giver of the note in such case is, however, at liberty to stand on the terms of his contract, and if it is understood that the shares of stock

he is to receive will not cost, in the aggregate, more than a certain sum per share, he is at liberty to refuse the stock if it will cost more than that sum, and the note is void for want of consideration.

APPEAL from the District Court of the Fourth Judicial District, City and County of San Francisco.

The note sued on was for three thousand three hundred dollars gold coin, with interest at five eighths of one per cent per month, and was due ten months after date. The plaintiff recovered judgment in the Court below, and the defendant appealed.

The other facts are stated in the opinion.

*Jarboe, Harrison & Robinson*, for Appellant.

It was agreed between Wood and Mahan that Wood was to have stock in an association, in which the shares were to be three hundred dollars apiece, and all expenses, outside land tax, and Secretary's fees in addition; that these expenses would not make the aggregate per share exceed three hundred and fifty dollars. It further appears that the par value of that stock—*i. e.*, the stock offered to defendant— was three hundred and fifty dollars per share. It further appears that every person taking stock must pay into the treasury of the society the sum of twenty dollars as his first installment, and ten dollars per month thereafter, till the full sum of three hundred and fifty dollars has been paid. It further appears that a premium fund is to be raised in addition, by bidding for choice lots, and that out of these premiums shall be paid expenses, outside tax, etc., and that a dividend shall be declared out of the balance of the premiums. It thus appears that in the one case the price of the share was to be three hundred dollars and expenses, and the other three hundred and fifty dollars and expenses, and the one is not an equivalent of the other.

The proposition is incontrovertible, and in a somewhat

similar case has met with the approval of the Courts. (See *Dyer* v. *Rich et al.*, 1 Metcalf, 192.) The election was with defendant and not with plaintiff, and, as in the Massachusetts case, the plaintiff having paid a consideration, was entitled to his damages, so, in our case, defendant not having re- ceived the thing which was promised him, is entitled to allege that he did not receive any consideration for his note. To paraphrase what was said by Mr. Lord in his argument in *Seaman* v. *Low*, 4 Bosworth, 341, the price of the stock entered into and was a vital part of the contract between plaintiff and defendant. (See *Seaman* v. *Low*, 4 Bosworth, 353.)

The stock was not made out or offered to defendant, and "a tender of a chattel is not shown so long as anything is left undone which would prevent the property from passing under a sale." (2 Parsons on Con. 159, 160.) A plea, even that chattels were held by the debtor, ready for delivering, is not good without proof of a protest. (*Barney* v. *Bliss*, 1 D. Chipman, 399.) The tender was not waived by defend- ant, because the stock was not on hand, or in existence, of which tender could have been made. The thing must exist, and there must be production and actual offer. (*Bakeman* v. *Pooler*, 15 Wend. 637). And it is not enough that it could have been produced. (*Breed* v. *Hurd*, 6 Pick. 356.) And no case, we believe, can be found holding that a waiver can be made of the actual existence and possession by the debtor of the thing to be tendered.

*T. B. Bishop*, for Respondent.

The agreement of the plaintiff was that the aggre- gate per share should not exceed three hundred and fifty dollars; and it appears from the certificate of incorporation, and article five of the articles of association, that it does not. But the counsel contends that it appears from the articles of association that the cost per share in the association as incor-

porated is three hundred and fifty dollars and expenses; and he bases his argument upon the by-laws, article five, and upon a portion of the by-laws, article eleven. Article five is in these words:

"Each person taking shares of the stock of this corporation, shall, upon his becoming a member thereof, pay into the treasury the sum of twenty ($20) dollars in gold coin, on each share, as the first monthly installment for the month of March, and ten ($10) dollars in like gold coin, monthly, and upon the fifteenth day of the month, in advance, for each and every month hereafter, until the sum of three hundred and fifty ($350) dollars shall have been paid in upon each and every share taken and subscribed for, and shall hold said share or shares subject to all the conditions and provisions herein contained."

Article XI provides for distribution of lots among shareholders; that choice of lots may be sold, that the stockholder giving the highest premium upon any lot offered shall be entitled to the same; and further proceeds in these words: "A dividend shall be declared pro rata among all the shares, of the balance of the moneys realized as premiums, and which shall remain in the hands of the Treasurer after all the expenses, taxes, and liabilities, including outside land assessments of this corporation, have been paid or provided for."

The meaning of these provisions of the by-laws, taken in connection with the certificate of incorporation which fixes the shares at three hundred and fifty dollars each, can admit of no ambiguity or doubt. The par value is the limit. It may all be called in, or it may not. It may be collected in part as installments and in part as premiums, but, however it is collected, three hundred and fifty dollars is the limit.

The case of *Dyer* v. *Rich*, cited by counsel, was an action of assumpsit on a written agreement. The Court holds that a promise that one shall receive a certificate of ten shares in the corporate stock of a certain manufacturing company whose capital shall be one hundred thousand dollars, divided into not more than two hundred shares, is not fulfilled by a tender of a certificate for ten shares of the stock of said company, of which only thirty-five thousand dollars are paid in, divided into seventy shares. And that the plaintiff having given full consideration for the stock as agreed to be delivered, could recover its value in such case. We do not controvert these doctrines, but simply say they have no application to the case at bar.

As to the question of tender, we say: That the defendant was the owner of those thirty shares of stock from and after the 9th day of April, 1869, the time of the organization of the company, and therefore it was not necessary to tender him what he already had. And also that he had credit on the books for the first ten installments. It is true he had no certificate of stock, but that was not necessary to make him a stockholder. The certificate is not the stock, but only an evidence of ownership. (Angell & Ames on Corporations, 9th ed., p. 563, 565.)

This is not a case in which a tender by plaintiff would be necessary in any event. The rule is stated by Mr. Sergeant Williams, than whom there is no better authority, in his note to *Pordage* v. *Cole*, 1 Saunders, 320.)

By the Court, Belcher, J.:

When the defendant made the promissory note in suit it was not definitely determined what amount of land the contemplated homestead association should own, nor what should be the number of its shares of stock. It was proposed to call it the Golden Gate Driving Park Homestead

Association, but it was not yet organized, and the plans in reference to it do not seem to have been fully matured. The plaintiff and his associates, who were proposing to form the association, appear to have been then engaged in investigating the titles and negotiating for the purchase of several of the parcels of land, and to have intended accordingly as they might be successful in completing their purchases or otherwise, to make the number of shares or lots from three hundred to four hundred. Under these circumstances the defendant bargained with the plaintiff for the purchase of thirty of the shares of stock. During the negotiation for these shares of stock the plaintiff stated to the defendant that the shares were to be three hundred dollars each, and all expenses, outside land taxes, Secretary fees, etc., in addition; that all these expenses added would not make the aggregate per share exceed three hundred and fifty dollars, and that they were to be paid for in monthly installments of ten dollars a share, except the first installment, which was to be twenty dollars. The defendant agreed to take of the plaintiff thirty shares, and gave him in payment of the first ten installments the promissory note in suit. At the same time he received a receipt acknowledging the payment of the "first to tenth installment upon thirty shares of stock, No. 201 to 230, of the Golden Gate Park Homestead Association."

When the corporation was afterward formed it adopted the name of the "Geary Street Extension Homestead Association," and it was provided in the articles of association that the capital stock of the corporation should be one hundred and forty thousand dollars, gold coin, divided into four hundred shares of three hundred and fifty dollars each.

Article V of the articles provided: "Each person taking shares of the stock of this corporation shall, upon his becoming a member thereof, pay into the treasury the sum of twenty dollars ($20) in gold coin on each share, as the first

monthly installment for the month of March, and ten dollars ($10) in like gold coin monthly and upon the fifteenth day of the month in advance for each and every month hereafter, until the sum of three hundred and fifty dollars ($350) shall have been paid in upon each and every share taken and subscribed for, and shall hold said share or shares subject to all the conditions and provisions herein contained."

By Article XI it was provided: "The land purchased by this corporation shall be divided and distributed among the shareholders in the following manner:   *   *   *   The Board of Directors shall also fix a time, which shall be in the month of September, 1869, and a place for the distribution, and decide in what order the lots shall be offered to the members.   *   *   *   At the time and place mentioned in such notice a meeting of the stockholders shall be held, when all the lots, parcels and subdivisions to be distributed shall be offered by auction to the members, and stockholders willing to give the highest premium upon the purchase of any lot offered shall be entitled to the same. *   *   *   All premiums bid upon lots or subdivisions by the stockholders must be paid the Treasurer at the time of the sale in gold coin of the United States.   *   *   * A dividend shall be declared pro rata among all the shares of the balance of the moneys realized as premiums, and which shall remain in the hands of the Treasurer after all the expenses, taxes, and liabilities, including outside land assessments of this corporation, have been paid or provided for."

Attached to the articles of association, and printed on a fly-leaf, was a notice, in the following words: "The Board of Directors have purchased the lands mentioned in the articles of association, at the rate of three hundred dollars, gold coin, per lot, with interest at the rate of ten per cent, payable quarterly—the monthly installments to be applied on the purchase price of the land as they are paid in. To

this will be added the taxes on the land, the outside land assessments to which the land is subject, and the necessary expenses of the association. Only so much of the capital stock will be called in as is necessary to meet the charges above mentioned."

At the organization of the company, the Secretary, by the direction of the plaintiff, who was its President, but without any authority so to do from the defendant, entered upon the books of the company the name of the defendant as the holder of thirty shares of the stock, numbered from two hundred to two hundred and twenty-nine, both inclusive.

The defendant never accepted any shares of stock in the company, and never attended any of the company meetings, and no certificates of stock were ever made out in his name, or tendered to him, till after the commencement of this action.

In view of these facts, the defendant contends that the stock of the " Geary Street Extension Homestead Association " is substantially different, not only in name, but in character and value, from that for which he bargained with the plaintiff. He insists, therefore, that the consideration for the note has wholly failed.

We do not see how the name which the association adopted, or the number of shares into which it divided its capital stock, could have been very material to the defendant. The shares represented lots or subdivisions of the land, and there is no pretense that the land, as a whole, was any other, or that the lots were any smaller or less valuable than the defendant had reason, from the representations of the plaintiff, to expect. As already seen, the defendant was, however, to receive shares which would not cost him, in the aggregate, more than three hundred and fifty dollars each, and he was at liberty, if he chose, to stand upon the terms of his contract, and refuse to accept such as did not comply with this or any other of its conditions.

Was a share of stock in the company, as organized, to cost only three hundred and fifty dollars? Looking only at the articles of association, it is apparent that the cost to the stockholder must be more than that sum. It is provided that each subscriber *shall* pay his monthly installments "until the sum of three hundred and fifty dollars ($350) shall have been paid in upon each and every share taken and subscribed for," and that upon failure to make any of the payments, his stock should be sold. But the money thus collected was not to be used to pay the taxes, costs, and other expenses. These were to be paid out of another Fund, to be raised by bids for the choice of lots. This other Fund, however, but for this charge upon it, would all have belonged to the stockholders, and the charge was, therefore, practically upon them. If these taxes and expenses shall amount to fifty dollars per share, as the plaintiff estimated that they might, then it seems clear that the cost to the subscriber for a share of stock must have been four hundred dollars, instead of three hundred and fifty dollars.

But it is claimed, on the part of the plaintiff, that under the "notice" which was printed on the fly-leaf of the articles of association, only so much of the capital stock could be called in as might be necessary to pay the sums named in the notice. If this be so, still there was required three hundred dollars for each share or lot, and interest on that sum at the rate of ten per cent, payable quarterly, until the amount shall be paid by the monthly installments, besides "the taxes on the land, the outside land assessments to which the land is subject, and the necessary expenses of the association." In this view of the case, the "interest" was not within the terms of the defendant's contract, and whatever it might amount to, it was an additional burden which he could not be required to bear.

On the whole, we are of the opinion that the stock offered to the defendant was, or at least might be, of greater cost to

him than that for which he bargained, and that he was, therefore, under no obligation to receive it.

Judgment and order reversed, and cause remanded for a new trial.