**Richmond.**

NORWICH LOCK MANUFACTURING COMPANY v. HOCKADAY.

January 26th, 1893.

1. JOINT-STOCK COMPANIES—*Prospectus—Subscribers' liability—Case at bar.*—Defendant signed a subscription to stock in a corporation, circulated with a prospectus stating that the corporation was to be located at R.; that the maximum capital was to be $400,000, and that its purpose was limited to "manufacturing locks, bolts, all house hardware, and other articles of a similar character." Later a second prospectus, under which the corporation was afterwards organized, was circulated for signatures, by which it was stated that the corporation was to be located outside of R.; that the maximum capital was to be $500,000, and the purpose to embrace a large variety of industries. Defendant refused to sign this second prospectus.

HELD:
> The defendant was not liable to plaintiff for stock he subscribed to under first prospectus.

2. IDEM—*Change of prospectus.*—A material change in the purposes of a corporation, as set forth in the prospectus, will release a subscriber thereto from liability, if made without his consent.

3. IDEM—*Capital stock—Assessments.*—When, up to the time of trial, the proposed capital stock of a corporation has not been fully subscribed, a subscriber thereto cannot be even liable for assessment on his subscription, unless there is in the article, or in the general law under which the corporation is formed, a provision to the contrary.

4. PRACTICE AT LAW—*Instructions—Case at bar.*—It is the province of the court to construe and instruct the jury as to the legal effect of all written instruments which are the subject of the controversy, and where the court (as in the case here) only exercised its function in comparing the subscription paper and the charter of the company, and in telling the jury that the latter was not, in legal effect, in accordance with the former, and that the plaintiff company was not *the* company provided for in the subscription contract signed by the defendant—

HELD:
> No error.

Error to judgment of the hustings court for the city of Roanoke, rendered March 14th, 1892, on a motion for judgment for money on contract, wherein the Norwich Lock Manufacturing Company, of Roanoke, Va., was plaintiff, and .J. R. Hockaday was defendant. The judgment being adverse to the plaintiff company, it obtained a writ of error to this court. Opinion states the case.

*Griffin & Glasgow,* for plaintiff in error.

*G. W. & L. C. Hansbrough* and *Scott & Staples,* for defendant in error.

FAUNTLEROY, J., delivered the opinion of the court.

The record discloses that about February 1st, 1891, a paper headed " A New and Important Industry for Roanoke," was circulated for signatures. It proceeds : " It is proposed to organize a company for the purpose of manufacturing locks, bolts, and all house hardware, and other articles of a similar character. The capital stock of the company will be from $350,000 to $400,000. An existing plant can be purchased at a proper valuation, and can be moved immediately *to* Roanoke. It would, *at* Roanoke, have a decided advantage over its present location. There can be no question that securing this manufacturing plant *for* Roanoke will be the greatest step," &c.

The conclusion was : " We * * * hereby subscribe the amount set opposite our names, respectively, to the capital stock of *the* company to be formed in accordance with the provisions of the foregoing prospectus." * * * To this prospectus, or subscription-list, is subscribed the name of " J. R. Hockaday and others," (opposite) $1,500.

The entire amount subscribed to this paper was less than

the proposed minimum of capital stock, and no company has been formed in accordance with the provisions of the aforesaid prospectus. Two months and more later, a paper, dated April 25th, 1861, was circulated for signatures, headed like the first, and proceeding: " An agreement has been made with a hardware manufactory in the North to sell its plant, &c. The stockholders of the company in the North have subscribed $200,000 to the company that is to be located on the property of the Roanoke Development Company, and the Roanoke Development Company has subcribed $75,000. The remaining $75,000 must be subscribed in order to secure the industry. The R. D. Company agree to donate a suitable site for the industry, for which full paid-up stock shall be issued; which stock the R. D. Co. agrees to donate to the company."

This prospectus paper concludes: " We, the undersigned, each, in consideration of the subscriptions of the others hereto, and the above agreement by the Roanoke Development Company, hereby subscribe the amount set opposite our names, respectively, to the capital stock of the company to be formed in accordance with the provisions of the foregoing prospectus," &c. The name of J. R. Hockaday, or " J. R. Hockaday and others," is not among the names of the subscribers to the capital stock under this subscription-list or prospectus; and the fact in the record is that J. R. Hockaday was approached and asked to subscribe under this second prospectus, and he positively and pointedly refused to subscribe, saying that it was a different contract and scheme from the first. Under this second prospectus the lock manufacturing plant was not to be located *in* or *at* Roanoke City (as it expressly was in the first prospectus), but to be put beyond the city limits, on the opposite side of the river, and on the lands of the Roanoke Development Company, in the county of Roanoke, where its principal office was to be located. The charter under which

the plaintiff company was organized was granted by the judge of the circuit court of Roanoke county May 21st, 1891, upon the presentation and provisions of a paper dated May 11th, 1891, and signed by Arthur C. Denniston, Edw. C. Pechin, Arthington Gilpin, S. W. Jamison, and P. L. Terry, purporting to be their agreement to become a corporation by the name of the "Norwich Lock Manufacturing Company, of Roanoke, Virginia," for the purpose of manufacturing, dealing in, and selling locks, &c., and other articles of house hardware, and all other articles composed of iron, wood, and other substances; of erecting and conducting all buildings and structures, and the machinery and appliances and fixtures incident thereto; of acquiring, holding, and selling iron and other metals, wood, and other substances; of acquiring and disposing of mineral and other lands in fee, timber and timber rights, water and water-power, and privileges, &c., as may be convenient for the business of the company; of erecting houses, &c., for the purposes of its business; of making and using all roads, &c., with power to borrow money, and create, issue, and sell or dispose of its bonds, and to secure the same by deed of trust, &c. The minimum capital to be $350,000, the maximum $500,000. The county of Roanoke to be the place where the principal office of the company is to be kept.

The Norwich Lock Manufacturing Company, the plaintiff in this suit, which was organized, under the foregoing charter, August 4th, 1891, was not formed in accordance with the provisions of the prospectus or subscription paper on which the defendant, Hockaday, subscribed, but differs therefrom, radically and materially, in essential general object and purpose, as well as in special details, powers, and provisions.

The location, which was, by the subscription paper which the defendant, Hockaday, signed, in February, 1891, to be immediately placed *in* the city of Roanoke, is, by the charter, and terms and agreement with the Roanoke Development

Company, to be on the lands of that company, lying extensively on the opposite side of the Roanoke river, outside of the limits of Roanoke City, and in the county of Roanoke. The maximum capital stock, which was to be $400,000, is, by the prospectus which Hockaday expressly refused to sign or to recognize, and by the charter under which the plaintiff company long subsequently organized, put at $500,000. And the purposes and powers of the company, as set forth in the prospectus and the charter under which they organized, are wholly and essentially different, embracing almost any and every industrial and speculative enterprise, whilst those specified and embraced in the prospectus or subscription signed by the defendant, Hockaday, and others, are, carefully and guardedly, expressly limited to the "purpose of manufacturing locks, bolts, and all house hardware, and other articles of a similar character."

The subscription-list which J. R. Hockaday and others signed in February, 1891, shows that the total amount of stock subscribed for, up to the day of the trial, was less, by $20,900, than the *minimum* capital stated in the prospectus or subscription contract signed by "Hockaday and others." There is no evidence in the record that the defendant, Hockaday, ever signed any but the subscription paper circulated in February, 1891 ; that he ever attended or heard of any meeting of stockholders, or paid any part of his conditional subscription, or expressly or impliedly promised to do so, or knew of or in any way acquiesced in the wide and material variances between the charter and the paper which he had signed ; while it is explicitly in evidence that he refused to sign, or in any way recognize, the paper which was substituted therefor, and sued upon in this case.

After the evidence was all in, the court, on motion of the defendant, instructed the jury " that the contract of subscription signed by the defendant, and proven in this case, is con-

·ditional upon the due organization of a company under and by virtue of said contract, and in accordance with the provisions thereof; and that the Norwich Lock Manufacturing Company, of Roanoke, chartered by the Hon. Henry E. Blair, judge of the circuit court of Roanoke county, Virginia, and introduced in evidence, is not such a company as is contemplated by and provided for in said contract. That the contract of subscription by the defendant proven in this case is a conditional one—conditioned upon the organization of a company under and in accordance with the provisions of the said contract; and if they believe, from the evidence, that the plaintiff company was not organized under said contract and in accordance therewith, they must find for the defendant."

The jury did find for the defendant, and the court refused to set the verdict aside, and entered judgment accordingly.

Upon the facts in the case we can conceive of no instructions more proper, and less calculated to mislead the jury, than those given in this case. It is indisputably the province and the duty of the court to construe and instruct the jury as to the legal effect of all written instruments which are the subject of the controversy and the basis of the suit; and the court only exercised its legitimate function in comparing the subscription paper and the charter of the company under which they organized, and telling the jury that the latter was not, in legal effect, in accordance with the provisions of the former; that the plaintiff, Norwich Lock Manufacturing Company, was not such a company, nor *the* company, contemplated by and provided for in the subscription contract signed by the defendant. The charter, and the prospectus under which they organized, and to which the defendant positively refused to accede or consent, differ from the mere subscription-list signed by the defendant, as to the location, the maximum capital, and the objects and scope of the enterprise; and the company proposed to be formed, to whose capital stock he conditionally subscribed, was never formed.

There is no question in this case of amendments to the charter, whether *material* or *immaterial.* The prospectus to which the defendant subscribed his name, conditionally, was substituted by another and a radically-different prospectus (to which he refused to subscribe), and by agreement and arrangement between parties with whom he had no privity; and the substitution and changes made in the scheme and scope of the enterprise were made before the charter was granted or applied for. If, after one has signed a contract agreeing to form a corporation for a named purpose, such con_tract is changed in any way, before the incorporation, without such subscriber's consent, he is not bound, because the company formed is not the company he subscribed to. 1 Lawson R. R. & P., sec. 441; *Dorris* v. *Sweeney,* 60 N. Y. 463; *Dutchess, &c.,* v. *Moffett,* 58 N. Y. 397; *Southern Hotel Co.* v. *Newman,* 30 Mo. 118; *Richmond Fac. Asso.* v. *Clarke,* 61 Maine 351; *Mohan* v. *Wood,* 44 Cal. 462.

In 1 Lawson R. R. and P., section 435, p. 777, it is said: " One who signs a mere subscription paper, agreeing to take a number of shares in a corporation to be formed, is not liable therefor after the formation of the company," where the company is formed not in accordance with the provisions of the subscription paper. " One who signed, with others, a subscription paper, promising to take and pay for shares in a joint-stock association to build a hotel, most of which subscribers were afterwards incorporated, but the defendant was not one of them, is not bound, by his subscription, to pay for his shares to the corporation, there being no privity of contract." *Machias Hotel Company* v. *Coyle,* 58 Am. Dec. 712; *Mount Sterling Coal-Yard Company* v. *Little,* 16 Bush. 429.

As before said, there is no question in this case of amendments to charter; but, even after a corporation has been organized under its charter, its charter cannot be materially amended, to bind a stockholder, without his consent. To vary the route

of a railroad, shortening the line, allowing business to be commenced before the full capital stock is subscribed, are instances of material changes which will release a stockholder. See note 1, sec. 500, p. 518, Cook on Corporations. To superadd a new and different business to the original undertaking will work a dissolution of the contract. *Clearwater* v. *Meredith*, 1 Wall. 40.

In *Fry's Executor* v. *Lexington & Co.*, 2 Metcalf (Ky.) 314, the court said : " Each stockholder has a right to insist on the prosecution of the particular objects of the charter." The stockholder may say : " I have agreed to become interested, and have contracted, in view of the profits expected, and the perils and losses incident to that description of business ; but I have not agreed that those to be intrusted with the capital I contributed shall have power to use it in a business of a different character, and attended with hazards of a different description." *Marietta, &c., R. R. Co.* v. *Elliott*, 10 Ohio St. Rep. 57 (1859); *Ashton* v. *Burbank*, 2 Dill. 435 (1873).

There is no evidence, or even a contention, that the defendant ever signed any subscription paper but the prospectus or subscription-list No 1, in February, 1891, which was abandoned and substituted by the prospectus and agreement dated May 11th, 1891 ; that he ever attended or heard of any meeting of stockholders, or paid any part of his alleged subscription, or expressly or impliedly promised to do so, or in any way acquiesced in the variances between the charter and the paper he had signed ; but there is undenied evidence that he positively refused to sign the paper which was substituted therefor. And the record plainly shows that there was in evidence before the jury the all-sufficient defense against the plaintiff's claim—viz., that, up to the trial, the plaintiff company had failed to obtain subscriptions to the extent of even its *minimum* of capital stock ; and, therefore, it could not lawfully hold the defendant liable for his mere conditional subscription,

even though the scheme and scope of the business proposed in the first prospectus had not been radically and essentially changed and enlarged by the second and substituted prospectus, to which defendant was not a party or privy. Cook on Corp., sec. 176, says : " It is an implied part of a contract of subscription that the contract is to be binding and enforceable against the subscriber only after the full capital stock of the corporation has been subscribed." He cannot be even liable to assessment unless and until the proposed capital stock of the company has been fully subscribed, unless there is a contrary provision in the article, or in the general law under which the corporation is formed. 1 Lawson R. R. and P., sec. 439, p. 733 ; Morawetz on Corp., sec. 259.

The rule of the Code of 1887, sec. 3484, applied to the evidence certified in this record, requires that the verdict of the jury, which is fully warranted by the facts and the law, and the judgment of the court thereon, should be affirmed.

JUDGMENT AFFIRMED.