## United States of America for use of J. G. McCarthy Company, Appellee, v. L. L. Leach & Son et al., on appeal of The United States Fidelity & Guaranty Company, Appellant.

## Gen. No. 19,287.

1. PAYMENT, § 6*—effect of taking note on original debt. The giving and acceptance of a promissory note for and upon the settlement of a previously existing past due indebtedness is prima facie evidence of the satisfaction and extinguishment of such indebtedness, so that no recovery can be had on the original account or debt without an affirmative showing that the note was not intended as a payment, satisfaction or extinguishment of the old debt.

2. PAYMENT, § 6*—effect of failure to surrender note on original debt. The fact that an unpaid note given for an original indebtedness was not surrendered before suit tends to show that it and not the original debt was considered the basis of liability.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

3. PAYMENT, § 6*—*effect of giving note to preclude action on original debt.* In an action in debt upon a bond given by a contractor and his surety in compliance with an Act of Congress for the protection of persons furnishing material and labor for the construction of public works, *held* as an ultimate fact that certain notes given by the contractor to the subcontractor were given and accepted in full settlement, satisfaction and payment of the original debt such as to preclude recovery on the obligation.

Appeal from the Circuit Court of Cook county; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Reversed with finding of fact. Opinion filed February 3, 1915.

JUDAH, WILLARD, WOLF & REICHMANN, for appellant.

EDWARD H. MORRIS, for appellee.

MR. JUSTICE GRAVES delivered the opinion of the court.

L. L. Leach & Son, an Illinois corporation, on July 14, 1900, entered into a contract with the United States Government to construct certain buildings in Washington, D. C., for which they were to receive $76,000. On July 21, 1900, it gave a bond in the sum of $38,000, in compliance with the provisions of an Act of Congress then in force, approved August 13, 1894, entitled, "An Act for the protection of persons furnishing material and labor for the construction of public works," with appellant, the United States Fidelity and Guaranty Company, as surety, and conditioned in part that it, the said L. L. Leach & Son, should "promptly make payment to all persons supplying labor or materials in the prosecution of the work contemplated by the contract," which said bond was then duly approved. Leach & Son were to be paid for the work as it progressed, amounts aggregating ninety per cent. of the agreed total amount. The other ten per cent. of such amount was to be paid upon the completion and

*See Illinois Notes Vol. et seq. XI to XV, and Cumulative Quarterly, same topic and section as in ct.

acceptance thereof. The J. G. McCarthy Company, also a corporation, did the painting and glazing for the structure and furnished the materials used in so doing, under a subcontract entered into between it and Leach & Son. For the part of the work and materials furnished by McCarthy Company, Leach & Son agreed to pay to it the sum of $1,967. Eighty-five per cent. of the value of the materials so furnished and of the labor performed was to be paid for from time to time, and at such time or times as Leach & Son should receive from the United States its payments under the original contract, the remaining fifteen per cent. thereof to be paid when all the materials and labor contracted for had been furnished and completed to the satisfaction of the supervising architect or person in charge of the work for the United States. The work under the McCarthy contract was by its terms to be completed on or before December 20, 1900. The entire contract of Leach & Son was to be completed by January 21, 1901. McCarthy Company performed its contract within the specified time and in due time Leach & Son completed its original or main contract and was paid therefor in full by the Government. Leach & Son and McCarthy Company had other business transactions during and after the time the work was being done under the contracts in question, and entirely disconnected therewith. Money was loaned by the McCarthy Company to Leach & Son from time to time and money was paid by Leach & Son to the McCarthy Company. On October 8, 1901, almost ten months after the work done by McCarthy Company was completed, and almost nine months after the entire contract was completed and after Leach & Son had received its pay from the Government therefor, two notes were given by Leach & Son to McCarthy Company, aggregating $3,321.21. This was the total amount then due from Leach & Son to McCarthy Company on all accounts. One of these notes for $1,660.60 was due in six months from date and the other was for

$1,660.61 and was due in one year from the date thereof. Each note drew five per cent. annual interest. The first one of these notes to become due included $301.37 of the amount due on the McCarthy contract, and the note last due included $979.46 of the amount so due thereon, a total of $1,280.83. The six months' note was paid at maturity. Afterwards Leach & Son became insolvent and the note due in one year was not paid at maturity and had not been paid when this suit was begun, which was on May 1, 1906, five and one-half years after McCarthy Company was entitled to its money under the contract sued on. This suit is in debt on the bond. The jury found the issues for the plaintiff, found the debt to be $38,000 and assessed the plaintiff's damages at the sum of $1,342.68. Upon this verdict judgment was entered.

Appellant makes the point that the notes given on October 8, 1901, were given and accepted in full payment of all amounts due appellee from Leach & Son, including the balance due under the contract in question here, and that appellant was thereby discharged from all liability to appellee on the bond sued on. Appellee does not deny that if the notes were so given and accepted in discharge and payment of the original obligation secured by the bond then appellant was discharged from liability thereon, but insists that the verdict, which amounts to a finding that they were not so given and accepted, is amply supported by the evidence and should not be set aside. In this connection, our attention is called to the fact that L. L. Leach, the president of Leach & Son, testified that the notes were given as an "evidence of indebtedness," "to show, that is, what was due on each job." "To straighten up the account on different jobs." "Well they were not given as payment," and when asked: "When you gave these two notes were they not given in full settlement of the balance that was due from L. L. Leach & Son to J. G. McCarthy Company"? Answered, "No," and

when asked at another time, ''Weren't they given in full settlement''? Answered, ''Well you might call it.'' And that Justin G. McCarthy testified that the notes were placed on the books of McCarthy Company as bills receivable and not as a cash credit. In weighing this testimony it should be borne in mind that it was given in December, 1912, while the transaction to which it relates took place October 8, 1901. More than eleven years intervened between the occurrences testified about and the trial. It is also worthy of note that both of these witnesses while they were testifying were interested in having appellant held liable on its bond. McCarthy was interested in collecting the unpaid balance and Leach was interested in having an honest obligation of Leach & Son collected from a corporate surety that had been paid to assume the liability. The testimony of Justin G. McCarthy was at the most but a conclusion from what appears on the books and is worthless as evidence. He testified: ''I don't know what they (the notes) were given for.'' ''I have no personal knowledge about it.'' ''I am taking the book's word for it.''

It is often true that facts existing, things done and circumstances surrounding the parties at the time of a transaction and connected therewith, the existence of which no one disputes, are of more probative force than the testimony of witnesses given at a time, long after the transaction is closed, when the particulars of it may well have been forgotten, or the interest of the witnesses may be a hindrance to frankness. Particularly is that true when the thing to be determined is the intent with which a given act was performed. There are in this case a number of uncontroverted facts that tend most forcibly to prove that the notes in question were intended as a payment of the debt.

First. The notes were given for an amount found due upon the settlement of existing past due accounts.

It has long been the settled law of this State that the giving and acceptance of a promissory note for and upon the settlement of a previously existing past due indebtedness is prima facie evidence of the satisfaction and extinguishment of such indebtedness and that no recovery can be had on the original account or debt without affirmatively showing that the note was not intended as a payment, satisfaction or extinguishment of the old debt. *McConnell v. Stettinius,* 7 Ill. 707, 713; *Ralston v. Wood,* 15 Ill. 159, 171, 172; *Smalley v. Edey,* 19 Ill. 207-211; *White v. Jones,* 38 Ill. 160-165; *Morrison v. Smith,* 81 Ill. 221, 223, 224.

Second. The debt was due January 21, 1901. The notes were given and accepted October 8, 1901. The first note to mature was due and was paid April 8, 1902. Before the maturity of the second note Leach & Son were hopelessly insolvent, as McCarthy Company well knew, and the note was not paid, yet no claim or demand on appellant was made for this debt and no notice, constructive or direct, of its existence was given appellant, until May, June or July, 1905, and no suit was begun to recover on it from appellant until May, 1906, five and one-half years after the debt was due, although other claims of appellee against appellant on like bonds given after this debt was due, to the amount of $7,000, were in the meantime adjusted and paid. The insolvency of Leach & Son furnished ample reason why appellee would naturally apply promptly to appellant for the payment of this debt, if it was believed a valid liability therefor existed. These circumstances without explanation are in accord with the theory, and strongly tend to show that it was mutually understood between appellee and Leach & Son that the original debt was paid and extinguished and merged in the notes.

Third. The explanation made in 1905 by J. G. McCarthy, Sr., who was president of the McCarthy Company when the debt became due and when the notes

were accepted, of why claim was finally at that late date made by his company against appellant for this debt was that, while he did not consider his company had any claim it was entitled to enforce against appellant for this debt, his son, Justin, who had been attending law school, believed it had. When this explanation is considered in the light of the facts that McCarthy, Sr., knew all about and participated in the transaction when it took place, and knew that appellant was originally liable for this debt, and that McCarthy, Jr., knew nothing about it except what he got from the books, the conclusion is irresistible that McCarthy, Sr., understood that the liability of appellant had been extinguished by the giving of the notes.

Fourth. The books of McCarthy Company show that the account in question was balanced by the notes, and the books of Leach & Son contain the following memoranda with reference to the unpaid note: "Our note given them for twelve months after date, due October 8, 1902, in full settlement of contract for painting, glazing, etc., of the northwest extension of the Bureau of Engraving & Printing."

Fifth. The rule adhered to in the Federal courts is that where a note is taken as mere evidence of a debt and is dishonored, the creditor, if he desires to sue on the original indebtedness, must surrender the note, but that the action on the original debt is in the meantime suspended. *Harris v. Johnston,* 3 Cranch (U. S.) 317; *The Kimball,* 3 Wall. (U. S.) 37; *Looney v. District of Columbia,* 113 U. S. 261; *Segrist v. Crabtree,* 131 U. S. 287. The fact that the unpaid note was not surrendered before suit tends to show that it and not the original debt was considered to be the basis of liability.

To our minds the testimony of Leach, uncorroborated by any fact, circumstance or witness, and contradicted by the recitals in the books of his own company, as well as by the books of McCarthy Company, falls far short of overcoming the legal presumption arising

from the giving of the notes, corroborated as that presumption is by the facts and circumstances hereinbefore recited. From a careful consideration of all the evidence in this record, we are forced to the conclusion that by a great preponderance of that evidence it is established that the notes were taken and accepted as a payment of the indebtedness included therein, and that in so far as the verdict of the jury amounts to a finding that the same were not so taken, it is against the manifest weight of the evidence.

The judgment of the Circuit Court is therefore reversed with a finding of fact to be incorporated in the judgment of this court.

*Judgment reversed with finding of fact.*

Finding of fact.—We find as an ultimate fact that when the notes in question were given by L. L. Leach & Son and accepted by J. G. McCarthy Company they were given and accepted in full settlement, satisfaction and payment of the indebtedness sued for in this case.