In re Fred C. Gillham, Deceased.
Country Club Real Estate Improvement Company, Appellant, v. Estate of Fred C. Gillham, Appellee.

Opinion filed May 13, 1936. Rehearing denied June 29, 1936.

McMillen, McMillen & Garman, of Decatur, and Warnock, Williamson & Burroughs, of Edwardsville, for appellant.

J. F. EECK, of Edwardsville, for appellee; JUNE C. SMITH, of Centralia, of counsel.

MR. JUSTICE STONE delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Madison county denying the claim of appellant against the Estate of Fred C. Gillham, deceased, upon a note in the sum of $2,500 executed by the said Fred C. Gillham and payable to appellant. The case came to the court below on appeal from the probate court where the claim had also been denied.

The note was given pursuant to a subscription agreement executed by Fred C. Gillham and 50 other persons late in the year 1927. The important provisions follow: ''I the undersigned hereby agree with the corporation hereinafter mentioned and with each and all of the others who subscribe to a like contract, to take 30 shares of stock at the par value of $100.00 each of the capital stock of a corporation to be organized under the laws of the State of Illinois under the name of Country Club Real Estate Improvement Company, or other appropriate name, and I do further agree to pay the par amount of said shares of stock to said corporation upon the incorporation thereof as follows: $500.00 in cash and the balance with my note with interest at 6% after January 1, 1929, payable in such installments from time to time as shall be determined by the directors thereof.

''The purpose of said corporation to be organized shall be to purchase, improve, and lay out as a residential park following the general plan of the blue print submitted herewith, the property commonly known as the Country Club of Decatur, Illinois, with possession not later than January 1, 1929, free and clear of incumbrances and material defects of title except as to special assessments for local improvements,

said premises to be subdivided into approximately 85 lots which shall be fairly appraised on an average valuation of $3500.00 per lot more or less.

''And I further agree to select one of said lots and the said corporation shall accept my said stock in payment thereof, and I will pay the difference for any such lot appraised for more than $3000.00, and said corporation shall give credit for the differences on my said note for any lot selected of less value than $3000.00. . . .

''This subscription shall not be binding until the subscription shall amount in the aggregate to $150,000.00, and further unless the premises mentioned can be purchased for not more than $2000.00 per acre.

''Application for incorporation may be signed by any three or more of the subscribers and subscription shall be deemed to be accepted by said corporation immediately upon the filing and recording of the Certificate of Incorporation thereof in the manner prescribed by law. . . .

''It being further understood that immediately upon the incorporation of said company that said corporation and its duly authorized officers and directors shall work out the practical manner, following the general plan heretofore mentioned, of accomplishing the purpose herein, and the sale of any of the building sites not originally disposed of.''

The contract further recites that the obligation of subscribers is several, not joint.

The charter of the corporation was issued December 19, 1927, and recorded December 20, 1927. The company had an authorized capital of $50,000 of which $25,500 was proposed to be issued at once. About 10 days after the incorporation of the company, Fred C. Gillham paid the $500, and on February 23, 1928, he gave the note which is the subject of this suit. Fred C. Gillham died, testate, on March 3, 1930, without having

paid his note, and without having selected a lot, and without having received any stock. It does not appear that he ever questioned his liability.

There were subscriptions to the amount of $150,000. The corporation proceeded to distribute the lots in accordance with the general plan. It appears that the issue of stock was in a large number of cases eliminated, and lots were conveyed to the subscribers on the payment of their subscriptions.

The defenses to the claim were: that the subscription called for an issue of stock to the amount of $150,000 when the corporation, as subsequently organized, was not authorized to issue stock in excess of $50,000 and was therefore void; that the note was taken in payment of the stock contrary to the statute (Cahill's Illinois Rev. Stat. 1931, ch. 32, ¶ 28); and that the contract was void in that it contemplated a purchase by the corporation of its own stock. All of the positions taken by the executor depend upon these three propositions.

The first contention is based upon the principle that a subscriber is not bound by his subscription agreement where the corporation, as formed, is materially different from that contemplated by the agreement. Appellee cites *Mahan v. Wood,* 44 Cal. 462; *Newport Cotton Mill Co. v. Mims,* 103 Tenn. 465; *Baker v. Fort Worth Board of Trade,* 8 Tex. Civ. App. 560; *Norwich Lock Mfg. Co. v. Hockaday,* 89 Va. 557. In the case of *Mahan v. Wood, supra,* the shares were to be sold at a higher price than that contemplated by the agreement. In *Newport Cotton Mill Co. v. Mims, supra,* the subscriber contracted for shares which would give him an ownership of 1/60th of the corporation, and in the corporation as formed he would be given shares amounting to an interest of 1/70th. In *Baker v. Forth Worth Board of Trade, supra,* the subscription contract called for a $50,000 corporation to establish a board of

o

trade. The corporation was formed with a $100,000 capitalization for the purpose of entering the real estate mortgage business. In *Norwich Lock Mfg. Co. v. Hockaday, supra,* the full amount of the proposed subscription was not signed, the factory was not placed in the town contemplated, and the corporate purpose was changed from that stated in the agreement.

The language of the court in the case of *Mahan v. Wood, supra,* states well the proper approach to this subject. The court says: ''We do not see how the name which the association adopted, or the number of shares into which it divided its capital stock, could have been very material to the defendant. The shares represented lots or subdivisions of the land, and there is no pretense that the land as a whole, was any other, or that the lots were any smaller or less valuable than the defendant had reason from the representations of the plaintiff, to expect.'' In *Banet v. Alton & Sangamon R. Co.,* 13 Ill. 504, the court, in deciding that a particular change of route in the railroad from that proposed was not material, said (p. 512): ''The corporation must remain substantially the same, and be designed to accomplish the same general purposes, and subserve the same general interests. But such amendments of the charter as may be considered useful to the public, and beneficial to the corporation, and which will not divert its property to new and different purposes, may be made without absolving the subscribers from their agreements.'' And again (p. 513): ''The alteration in the present case is not of such a radical character as to exonerate the stockholders from the payment of their subscriptions. The general features and objects of the corporation continue unchanged. The termini of the road remain the same; the only change consisting in a deviation from an intermediate point. The work is still designed to accommodate the same line of travel and transportation, and

to promote the same general interests. The length of the road is reduced, and the cost of construction diminished.''

In the instant case the agreement contemplated the use of a corporation as a vehicle for the execution of a plan to purchase and subdivide a particular tract of land. There has been no variation from that plan except as to the amount of stock which may legally be issued and outstanding at any given time. There is no variance in the cost of the project, except in so far as the promoters effected a saving to the subscribers in fees and taxes by the use of a corporation with a smaller authorized capital stock. There is now, and there has been at all times, sufficient stock available to fulfill this contract, and there are now, and, at all times have been, lots to be selected. They are the lots that were contemplated. The subscription agreement as hereinbefore set forth directs the execution of the general purposes of the agreement in a practical manner following the general plan outlined in the agreement. The agreement shows that the subscribers contemplated that minor changes in the plan might be made in working out the detail of a practical plan for acquiring and subdividing the property. We do not think it can be said that Fred C. Gillham was harmed in any way by the aforesaid change in the plan. It is therefore unnecessary to consider the question of estoppel presented by his payment of $500 after the charter was recorded.

The statute which forbids the acceptance of a note in payment for stock (Cahill's Illinois Rev. Stats. 1931, ch. 32, ¶ 28) is directed against the issue of stock. It does not forbid the substitution of a note for a subscription contract as evidence of indebtedness. No stock was issued to Fred C. Gillham and it does not appear that any stock was issued until the money was paid. But it is contended that there was an agreement

to accept the note in payment of the stock and cases are cited (*United States v. Leach,* 191 Ill. App. 346, 351; *Morrison v. Smith,* 81 Ill. 221, 223) to the effect that the giving and acceptance of a promissory note upon the settlement of a pre-existing indebtedness is prima facie evidence of the satisfaction of such indebtedness. Appellant cites *Cheltenham Stone & Gravel Co. v. Gates Iron Works,* 124 Ill. 624, 627; *Walsh v. Lennon,* 98 Ill. 27, 31; *McHenry v. Croft,* 163 Ill. App. 426; *Schuman v. Arsht,* 249 Ill. App. 562; and *Illinois-Indiana Fair Ass'n v. Phillips,* 328 Ill. 368, on 376, to the effect that a note is not to be taken in payment of an account unless there is an express agreement to so take it. The application of these general presumptions is not safe without a consideration of the facts involved in the cases. In some the question is whether the note settles the amount of the obligation, and in others the question is whether the note of a third person is to be taken as a conditional payment or as a final payment of an account. Here the object of the parties might have been to secure a direct obligation to the corporation which would be easier to handle than a subscription agreement. The agreement does not say that stock is to be issued in return for the note. It is a general rule that the law prefers a construction of a contract which will make it legal to one which will render it illegal. *Crittenden v. French,* 21 Ill. 598; *Hirschberg v. Cusack Co.,* 206 Ill. App. 629. In so far as the subsequent acts of the corporation show anything with respect to the agreement, they show that it was not the intention to issue stock in return for the notes.

In respect to the third contention it has been held that the purchase by a corporation of its own stock is illegal. This has not been an arbitrary rule in Illinois. The general purpose of the rule is to protect creditors. It has been held that such purchases must be author-

ized by the board of directors. *Brown v. Fire Ins. Co. of Chicago,* 274 Ill. App. 414, 420. It has also been held that there may be an estoppel to raise this question. Here the purchase by the corporation of its own stock is an essential part of the plan. No creditor is involved. Fred C. Gillham, knowing the provision, made a substantial payment on the stock. We think, if the plan were questionable for lack of a resolution of the directors in this case, Fred C. Gillham would be estopped to raise this question.

The foregoing are the only defenses presented for our consideration. We do not think they are sufficient. The judgment of the circuit court of Madison county is reversed and the cause remanded to said court for further proceeding in harmony with the views herein expressed.

*Reversed and remanded.*