Country Club Real Estate Improvement Company, Appellee, v. Estate of Fred C. Gillham, Deceased, Appellant.

Opinion filed March 9, 1938.

J. F. EECK, of Edwardsville, and JUNE C. SMITH, of Centralia, for appellant.

McMILLEN, McMILLEN & GARMAN, of Decatur, WARNOCK, WILLIAMSON & BURROUGHS of Edwardsville, for appellee.

MR. JUSTICE EDWARDS delivered the opinion of the court.

In the latter part of 1927, Fred C. Gillham, now deceased, and 50 others, entered into a subscription agreement for stock in a corporation to be organized to further the purposes of the subscription, which was not to be binding until the aggregate of the subscriptions should amount to $150,000. The corporation was organized under the name of Country Club Real Estate Improvement Company, with a total authorized capital of $50,000. Each of the 51 subscribers agreed to take 30 shares of stock of the corporation, of the par value of $100 each, upon its incorporation, to be paid for as follows: $500 in cash, and the balance, or $2,500, by note payable January 1, 1929. Gillham paid $500, and on February 23, 1928, executed the promissory note which forms the basis of this litigation.

The charter discloses that the purpose of the organization was to own real estate, improve same for dwelling houses, and selling or leasing of such real estate.

The subscription agreement provided that the corporation should purchase and lay out, as a residential park, certain property known as the Country Club of Decatur, Illinois, the tract to be subdivided into approximately 85 lots, to be fairly appraised on an average valuation of $3,500 per lot more or less. A further agreement was that each subscriber should select one of said lots, and the corporation would accept in payment therefor the stock of such subscriber therein, he to pay the difference between the appraised value, and $3,500, and the corporation to give credit on the note if the lot selected was of less value than $3,000. Furthermore, by the agreement, the corporation and its officers and directors were to work out, in a practical manner, the accomplishment of the purposes of the organization.

Gillham died testate on March 3, 1930, without having paid such note, which was filed as a claim against

his estate, and upon hearing the probate court disallowed same, as did the circuit court upon appeal. The claimant thereupon sought a review by this court, which reversed the order of the circuit court and remanded the cause; *In re Gillham,* 286 Ill. App. 370. The matter was further heard in the circuit court, where the claim was allowed in the sum of $3,755.41, from which order the estate of Gillham has prosecuted this further appeal.

After the matter was decided by this court, the defendant sought to have the cause reviewed by the Supreme Court, which denied the right of appeal; making the decision of this court final and conclusive as to all matters considered and determined by it upon the first appeal.

Numerous grounds are assigned as error; the first of which, that the note is void because of illegality and want of consideration, and the second, that the note was accepted in payment of stock contrary to the terms of the statute, were passed upon adversely to defendant in the former appeal, and the decision of this court thereon is now binding upon us; *People v. Militzer,* 301 Ill. 284.

The third assignment of error is that if deceased or his estate can be held liable on the agreement under which 51 subscribers each agreed to take 30 shares of stock, amounting to $153,000, he cannot be held for more than a pro rata share of the $50,000 stock authorized by the charter to be issued, and as a condition precedent thereto, there must first be an allotment of the shares among the stockholders.

*In re Gillham, supra,* this court said: ''In the instant case the agreement contemplated the use of a corporation as a vehicle for the execution of a plan to purchase and subdivide a particular tract of land. There has been no variation from that plan except as to the amount of stock which may legally be issued and out-

standing at any given time. There is no variance in the cost of the project, except in so far as the promoters effected a saving to the subscribers in fees and taxes by the use of a corporation with a smaller authorized capital stock.''

The corporation being merely an instrument to effectuate the purpose of the subscription agreement and to facilitate its execution, the practical effect of the payment of his subscription by each of the subscribers was to vest him with the ownership of an undivided 1/51st part in the assets and property of the organization, to be satisfied and set off to him in the form of one of the lots which he should select, and when he had done so his stock, as it was called, or the evidence of his ownership of said undivided interest, would be satisfied and he no longer be interested therein.

We do not think it material that the agreement provided, upon payment of the note, that he was to receive shares of stock which he might trade for one of the lots. Whether the evidence of his ownership and right to acquire a lot should be designated as stock, or termed something else, it meant, in fact, that when he paid his note he thereby acquired an undivided 1/51st part ownership in the organization, and we deem it unimportant that the agency or instrument for carrying into effect the purposes of the agreement, that is, the corporation, should be authorized to issue a lesser amount of stock than referred to in the subscription agreement. By his subscription and the execution and delivery of the note he became bound to pay the full amount of the latter in order to acquire his ownership in the organization and right to trade same for one of the lots.

The remaining contentions are directed to the proposition that the consideration for the note was a lot to be selected. We think the consideration was the acquiring of an undivided interest in the organization,

with the incidental right to select a lot and transfer such interest in discharge of, or upon, the price of same, which should be appraised value thereof.

It is also urged that the board of directors of the corporation placed certain building restrictions upon the use of the lots, after signing the contract and note, and that they are thereby vitiated.

The contract provided that the officers and directors of the corporation should work out the practical manner, following the general plan, of accomplishing the purposes of the organization. Gillham signed the agreement, hence gave his assent to the adoption of any reasonable terms or requirements to be so imposed looking to the general end of effectuating the aims of the corporation. No claim is made that such restrictions were unreasonable or unfair, hence we do not think there is any force in the contention.

It further appears that the corporation allowed the taxes on the lots to become delinquent, and it is asserted that such fact releases defendant from the agreement.

The corporation, under the contract, was bound to convey the lots selected, after payment of the subscription price, free from incumbrances; consequently, if defendant paid the note and made choice of a lot, he or his estate could demand such a title before surrendering his stock or interest in the organization. This, however, is not a condition precedent to payment of the note, but a right which defendant could insist upon when the lot was selected and conveyance desired, and the corporation could be required to transfer such a title. It is not a defense to this demand.

We think the trial court properly allowed the claim.

*Judgment affirmed.*